**WILSON FOODS CORPORATION,**
**successor in interest to Wilson &**
**Company, Own Risk, Petitioner,**

v.

**Margaret L. NOBLE and the Workers'**
**Compensation Court of the State of**
**Oklahoma, Respondents.**

**No. 53132.**

Court of Appeals of Oklahoma,
Division No. 2.

April 22, 1980.

Rehearing Denied May 14, 1980.

Certiorari Denied June 23, 1980.

Released for Publication by Order of
Court of Appeals June 26, 1980.

Mort G. Welch, Abowitz & Welch, Oklahoma City, for petitioner.

William H. Brogden, Oklahoma City, for respondents.

BRIGHTMIRE, Presiding Judge.

The employer, Wilson Foods Corporation, seeks review of a worker's compensation award claiming that the trial judge was not justified in finding (1) that claimant, Margaret Noble, sustained a compensable accidental injury; (2) that her failure to give her employer timely written notice of the injury was excusable; and (3) that the statute of limitations had not barred her claim.

## I

The 52-year-old worker filed her claim October 11, 1977 stating that she had worked for Wilson as a bacon slicer for many years and that her continuous daily work on the slicing machine had caused a gradual traumatic deterioration of her spine until at last, on November 9, 1976, it became too painful for her to continue working. Her physicians concluded she had ruptured an intervertebral disc, so they operated and she has not worked since. Wilson filed an answer denying every element of Noble's claim.

The trial judge found Noble did sustain an accidental injury within the purview of the Workers' Compensation Act—85 O.S. 1971 § 1 et seq.—"consisting of work-connected strain from [the] cumulative effect of micro-trauma occurring between August, 1975 and November 9, 1976, which may have aggravated and brought to light a pre-existing subclinical and subsymptomatic

condition [resulting] from [a] September 2, 1969 automobile-pedestrian collision." In fashioning this conclusion the judge assessed the medical testimony given him and invoked the concept advanced in *Bill Gover Ford Company v. Roniger*, Okl., 426 P.2d 701 (1967)—that an internal organic failure occurring as a culminating effect of daily on-the-job strain and exertion could be found to be a compensable accidental injury under the Workers' Compensation Act.

## II

In its attack on this finding Wilson concedes the existence of a long line of decisions [1] recognizing as compensable accidental injuries those that are the culmination of insidious work-related insult to some part of the body and are manifested by work performance disability. It contends, however, that that legal concept does not apply here because "there is no evidence . . . of any repeated trauma or external force to which claimant's body was subjected while working as a bacon slicer."

Our interpretation of the evidence differs somewhat from that of Wilson's.

At the hearing on March 29, 1978 the lady testified she had worked for Wilson 22 years. She had performed various tasks but her permanent job was running a bacon slicing machine. For several years she would get to work about 0630 hours and start swinging 20 to 30 pound sides of bacon from a cart onto the slicer. She had to work fast, pull each slab of meat with a hook, walk a distance, and lift it onto the machine. She said that ordinarily she fed about a ton of pork bellies an hour into the slicer, usually for about five and a half hours but some days all day long.

Her medical history also disclosed that in the summer of 1969, while crossing a street,

1. *Acme Materials Company v. Wheeler*, Okl., 278 P.2d 234 (1954)—accidental back injury which developed over a 15 year period of daily on-the-job jarring while operating a big diesel shovel. *Macklanburg-Duncan Co. v. Edwards*, Okl., 311 P.2d 250 (1957)—accidental sustension of finger tip neuritis from rubbing down wood with steel wool over an eight year period.

See also *Utica Square Salon of Beauty v. Barron*, Okl.App., 595 P.2d 459 (1979); *Esmark/Vickers Petroleum v. McBride*, Okl., 570 P.2d 951 (1977); and *Munsingwear, Inc. v. Tullis*, Okl., 557 P.2d 899 (1976). For compensable traumatic aggravation of pre-existing condition, see *Refrigerator Transport, Inc. v. Creek*, Okl., 590 P.2d 197 (1979).

claimant was struck by an automobile injuring her left hip. Following this incident she began to experience some pain in her back. In the fall of 1975 her back problem gradually began to worsen. Finally she brought it, along with some other matters, to the attention of her gynecologist. He hospitalized her, examined her, ran some tests and concluded she had an instability at the L–4, L–5, S–1 levels of her spine accompanied by pain radiating down into the gluteal area. She was given an analgesic to allay the pain, instructed to use certain unspecified precautions for the protection of her back, and was referred to an orthopedic specialist for a more definitive evaluation. In his report the orthopod said he received from claimant a history of a mild dorsal discomfort in the morning which would gradually increase during the work day and then subside upon her return home in the evening. The impression of the bone and joint man was that she was experiencing the effect of a lumbosacral strain. Because she was about 20 pounds overweight the physician recommended she go on a weight reduction diet and walk for exercise. He advised her to continue working and to return in six weeks.

Her distress continued to deepen until at last, on November 9, 1976, it became so severe the woman simply had to quit working. The next day her physician carried out a myelographic study of her lumbar spine. The radiologist reported seeing a ventral defect at the L–4–5 level the appearance of which suggested a "bulging intervertebral disc." On November 17, 1976, back surgery was performed on her. The disc, as seen through the interlaminary opening made between L–4–5, was found to be "sticking up about a quarter of a cm. to one-half a cm. and was very soft and baggy." It was incised and from it was removed "a lot of degenerated disc material to totally decompress [the adjacent] nerve root." Noble apparently obtained some relief from the operation and her postoperative course was unremarkable. However, she still had back pain when she bent over or tried to lift

something and for this reason was unable to return to the bacon slicing routine.

Claimant placed in evidence the deposition—taken on November 22, 1977—of a general practitioner who had also examined her and otherwise studied her case. He opined Noble "had sustained 50 percent permanent partial disability to the body as a whole for the performance of ordinary manual labor as a result of the accident [he had previously] alluded to on November 9 of 1976 while [she was] employed by Wilson Foods Corporation of Oklahoma City." He had "alluded to" the November 9 accident earlier in the deposition during his recitation of the history given him by the claimant which was substantially as she testified to at the trial. More specifically the physician explained that the history of claimant's lower back problem indicated the gradual development of both strain and sprain of her lower back resulting from a multiplicity of small traumatic insults during her daily bacon lifting which culminated in a ruptured disc the protrusion of which in time caused more and more pressure on the nerve root until finally on November 9, 1976 the pain became totally disabling. And it was possible also, said the physician, that the initial onset of the back pathology was the traumatic auto-pedestrian event in 1969—an event ultimating in a vulnerability to daily work-generated spinal impacts.

This evidence, we think fully justified the trial judge's finding of a job related accidental personal injury.

### III

▮ Wilson's second contention—that it was error for the court to excuse claimant's failure to give timely written notice—is also without merit.

The court found that claimant's failure to give her employer the 30 day notice required by 85 O.S.1971 § 24 [2] was to be excused because Wilson's evidence did not show it had been prejudiced as a result. This discretion the statute vests in the trial court. Wilson says, however, the judge was

2.  This statute was repealed in 1978.

bound to find it had been prejudiced because it was prevented by the lack of notice from making an early investigation of the accident and cites *Sapulpa Tank Company v. Cole*, Okl., 386 P.2d 988 (1963). That case does not aid Wilson, however. In it, after discussing the reason for the notice requirement, the court concluded, under facts even more clear than those of the instant case, that an earlier notification to the carrier of its employee's injury would not have enabled it to make a more thorough investigation of the circumstances leading up to the claim. In *Sapulpa Tank* the claimant had sustained a single trauma back injury. Here the lady sustained a "cumulative effect" accident and, *a fortiori*, there is even less chance of an early investigation turning up something a later one would not. Moreover, four months before the accidental event Noble had submitted a claim for sick leave and pay citing "back trouble" as her illness. On November 19, 1976, just 10 days after the accident, Noble submitted a physician's report to Wilson reporting a herniated disc at L–4–5. These claims did not, as the trial judge correctly found, prejudicially mislead Wilson but if anything gave notice that its employee was off work because of a serious back problem the cause of which should have been the subject of an aroused curiosity if fulfillment of Wilson's zeal for an early alert was then as vital as it now professes.

## IV

■ Wilson's last point—that the trial judge was bound to find Noble's claim was barred by the one year statute of limitations—must also be rejected. The court found that Noble filed her claim within one year from the time when, following the November 9, 1976 incident, her physician first made her aware of the fact her back condition may be work related. This was timely.

There is no satisfactory evidence that she knew prior to November 9, 1976 that her work at Wilson was injuring her back. As a matter of fact, given the nature of the accident, she probably was not aware that it was work related even on November 9—the day she had to quit. It would seem to be somewhat incongruous for the law to require extraction of scientific evidence from medical experts on the subject of causation as a predicate for a factual finding of a compensable injury, and yet impose upon an injured unskilled laborer the onerous obligation to reach correct sophisticated medicolegal conclusions based merely on her own experiences and observations. True in this case claimant knew she started having back pain during the performance of her work in August or September 1975 and that it subsided during non-working hours. She may have even suspected the existence of some relationship between the job and her pain. But this is not to say she recognized or understood the mechanism or process involved sufficiently to determine that she was daily injuring one or more of her intervertebral discs on the job and that eventually it would give way and disable her. The fact is, as we noted earlier, that under the evidence there was no compensable "accidental injury" to give notice of until the disabling event's occurrence on November 9, 1976. This claim was filed October 11, 1977—less than a year later—and thus is not defeated by a limitations bar.[3]

The order appealed is affirmed.

BACON and NEPTUNE, JJ., concur.

---

3. *Munsingwear, Inc. v. Tullis, supra* note 1, holding that under the circumstances of a cumulative effect injury the one year statute of limitations begins to run on the day the claimant becomes aware he has sustained a disabling injury and that it was caused by job related activity, and such date is generally a mixed question of law and fact. See also *Esmark/Vickers Petroleum v. McBride, supra* note 1.