Glenn L. BUNTIN, Petitioner,

v.

SHEFFIELD STEEL, Own Risk, and Workers' Compensation Court, Respondents.

No. 63812.

Court of Appeals of Oklahoma, Division No. 4.

July 16, 1985.

Rehearing Denied Aug. 12, 1985.

Certiorari Denied Oct. 16, 1985.

Released for Publication by Order of Court of Appeals Oct. 18, 1985.

Wilson Jones, Frasier & Frasier, Tulsa, for petitioner.

E.D. Hieronymus, Rhodes, Hieronymus, Jones, Tucker & Gable, Tulsa, for respondents.

BRIGHTMIRE, Presiding Judge.

Does competent evidence support the Workers' Compensation Court's finding and conclusion that the injured employee's claim of long-term on the job accidental loss of hearing is barred by a one year statute of limitation?

We hold it does not and vacate the order appealed.

I

For 22 years claimant, Glenn L. Buntin, worked as a millwright in Sheffield Steel's noisy plant. On May 17, 1984, he commenced this proceeding to obtain compensation for hearing loss in both of his ears caused by an accidental injury arising from many years of exposure to noise while working at the steel plant. He alleged in effect that he became aware of his compensation entitlement some ten days earlier—on May 7, 1984.

The employer pleaded as one of its defenses that the claim was barred by the one year statute of limitation prescribed in 85 O.S.1981 § 43, which says that a right to claim compensation shall be barred "unless, within one (1) year after the injury ... a claim for compensation thereunder is filed with the Administrator."

The trial court held that subject claim was not timely filed and denied it. Claimant appeals.

II

Claimant contends that the order is both factually and legally wrong because it is premised on an unsupported finding of fact, namely, that at the time he became aware of some hearing loss—more than a year before he filed his claim—he also knew that the auditory impairment was causally connected to his job. The fact is, says claimant, he suspected the hearing deficit could be job related by May 7, 1984, but he was not aware that it was until a physician advised him of such fact on August 8, 1984.

The primal matters to be determined, then, are whether claimant sustained an accidental injury in the course of his employment with Sheffield and, if so, the date when it occurred. The answers, of course, depend on the definitive scope of the term "accidental injury" as used in the Workers' Compensation Act and the evidence relative to the subject.

Among the various types of industrial accidental injuries there is one which is relevant here referred to as a "cumulative effect accident." This type occurs over an extended period of time and is characterized by repeated minor traumas, the imperceptible cumulative effect of which eventually produces some discernible physical or mental malfunction. Such phenomenon was judicially recognized with respect to a loss of hearing situation in *Southwest Factories, Inc. v. Eaton*, 453 P.2d 1021 (Okl.1969).[1] It was enlarged upon in *Munsingwear, Inc. v. Tullis*, 557 P.2d 899 (Okl.1976). For the purpose of establishing a commencement date for the one year limitation period in cumulative trauma cases, the court said the accidental injury is deemed to have occurred when claimant becomes aware of two things: (1) he has an impairment and (2) such impairment is causally connected to his job.

The first essential fact—that the claimant knew more than a year before he filed

1. Recovery to claimant was disallowed because claimant had been to a doctor several years before he filed a claim and said he "knew what his employment was doing to his hearing, but was afraid he would lose his job if he requested medical attention from his employer." *Id.* at 1023.

this action that he had sustained a loss of hearing—was perhaps sufficiently, if uncertainly, established.[2] But, according to claimant, the second essential fact—that he knew more than a year before he filed this proceeding that his hearing loss was causally connected to his job—was not in any way established by competent evidence.

The employer on the other hand says there is evidence to support a finding of both constituents and points to the following evidence. Several years earlier claimant's union president had recommended that the members submit to company sponsored hearing tests. Sometime along in September 1981 claimant signed up for a test but he says it was never given. On cross examination the following colloquy took place.

"But, why were you wanting a hearing test?" claimant was asked.

"Well, my hearing has got bad the last year," he answered.

"Well, did you think it was job related?"

"Yes," said claimant.

On redirect examination claimant was asked about this again.

"Did you think that your hearing loss was job related when you signed that for the hearing test?"

"No," he replied.

Later during recross examination the employer once more delved into the 1981 hearing test request. There was an objection and the court said this:

"Well, he earlier stated that he *knew* it was job related. That is what he said. That is where the Court is now. One time he said he *knew* it was job related and the next time he said he didn't." (Emphasis added.)

▮▮▮ We, of course, have an advantage the trial judge did not have—a transcript of claimant's testimony. As shown above it reveals that claimant did not say he "knew" his hearing loss was job related in 1981, but that he *thought* it was. The distinction is crucial because what we are dealing with here is a medicolegal causation obscurity. Realistically, for a person like claimant to "think" that a latent physical abnormality is causally related to a certain thing amounts to no more than indulging a speculative assumption or the possession of an opinion that may or may not be scientifically sound. What the claimant *knew* with regard to the cause of his hearing loss in 1981 and what he felt, thought or suspected to be the cause are two different things. Awareness connotes knowledge. To be aware of something is to know it. To have an unenlightened hunch, feeling, premonition or thought about some abstruse medicolegal fact rises to a level of proof no higher than imaginative conjecture. To prove occult medical causation the law requires expert testimony. One can suspect certain causes of physical abnormalities but unless the abnormality is of such a nature that the cause is obvious, e.g. worker's leg severed by the lash of a snapped crane cable, the thought or guesswork of a medically ignorant claimant as to what may be causing an esoteric pathological abnormality is not, standing alone, knowledge—if indeed it ever is appropriate to refer to one's opinion as "knowledge"—of the probative quality necessary to start the § 43 statute of limitation running.

As we pointed out in *Wilson Foods Corp. v. Noble*, 613 P.2d 485 (Okl.Ct.App. 1980), it would be incongruous for the law to require a judicial finding of the cause of some human physical or functional abnormality to be supported by scientific evidence elicited from highly trained medical experts on the one hand, and on the other, require a scientifically untrained steel worker to reach correct sophisticated medicolegal conclusions based merely on his own experiences and observations.

The scientific evidence in this case underscores such a paradox. There are two important types of underlying pathological

---

**2.** There was, however, definite evidence that the company knew he had a hearing deficit as a result of an audiogram administered by a company audiologist circa 1974.

changes involved in most hearing losses: (1) neurosensory or bone conduction degeneration of the inner ear component, and (2) middle ear impairment resulting in reduced reception of air conducted sound. The former is ordinarily attributed to prolonged exposure to loud noises and is irreversible. The latter type of hearing loss is not due to loud noise exposure and often is reversible. It takes the expertise of an audiologist to tell which type of loss is involved and a trained physician to determine the cause.[3]

In view of all this, we firmly believe that with regard to medicolegal problems such as we have here fairness requires that claimant's recovery-related rights—in this case those concerned with the statute of limitations bar—should be protected with evidence of no less quality or degree than the law demands for the protection of the employer's liability-related rights. In other words, in terms of the cause of a person's auditory impairment we know that the law will not accept as having any probative value the testimony of a layman concerning what he "feels," or "thinks" is the cause of his hearing loss, or what he "believes" to be the cause. Only the opinions of medical experts based on history and appropriate auditory testing will suffice. So certainly if a claimant's opinion as to the cause of his hearing loss is not sufficient to establish the employer's liability for compensation, it should not be sufficient to trigger the commencement of the one year limitations period unless and until, of course, it is shown to be based on enlightenment imparted by an informed and qualified expert.

Here there is no evidence that claimant received expert advice concerning the cause of his hearing loss before he filed this lawsuit. Though the employer questions the propriety of this procedure we are not aware of any law that requires a claimant to possess scientific evidence of all elements of his claim at the time he files his Form 3.

**III**

We hold, therefore, that there is no competent evidence to support the trial court's conclusion that the claimant knew his hearing loss was job related before being apprised of that fact by a board certified otolaryngologist following an examination on August 8, 1984, and that the § 43 limitation period had not begun to run on May 17, 1984, when he filed this claim.

The order denying the claimant compensation is vacated and the cause remanded to the trial court for further proceedings.

RAPP and STUBBLEFIELD, JJ., concur.

---

**3.** In a similar case involving an employee's claim for compensation for hearing loss against Sheffield Steel, the company's audio tester testified that he did not tell employees that they had a job related hearing loss because he did not have "the ability or training to determine [causation]." *Staples v. Sheffield Steel,* No. 63,801, unpublished op. at 5 (Okl.Ct.App. July 16, 1985). He added that only a medical doctor has that training and ability. *Id.*