**CITY OF NICHOLS HILLS and State Insurance Fund, Petitioners,**

v.

**.Robert A. HILL and the State Industrial Court, Respondents.**

**No. 46560.**

Supreme Court of Oklahoma.

March 11, 1975.

Rehearing Denied May 13, 1975.

Sam Hill and Charles E. Payne, Oklahoma City, for petitioners.

William R. Davis and M. Fred Austin, Oklahoma City, and Larry Derryberry, Atty. Gen., Oklahoma City, for respondents.

BARNES, Justice:

This proceeding for review seeks to vacate an order awarding compensation for accidental injury from exposure to contaminated dust, which caused or aggravated histoplasmosis resulting in permanent partial disability.

Original claim for compensation alleged accidental injury by inhalation of dust July 1, 1970, causing illness and disability.

Petitioners, respondents herein, answered denying fact of injury in covered employment, and alleged claimant suffered from disease neither caused nor aggravated by employment. Further, claimant never requested medical treatment, or gave notice he suffered from condition within provisions of 85 O.S.1971, § 1, prior to filing claim, and failure to give notice prejudiced respondents.

At a hearing January 17, 1973, claimant was permitted to amend his claim to show injury occurred May 25, 1970, and that injury was to throat, lungs, and respiratory injury to body as a whole.

Respondents stipulated as to employment and compensation rate, but denied notice of injury, or that illness resulted from employment. Respondents also moved to amend answer by denial of jurisdiction of the court to adjudicate the claim, upon the ground claim was for an illness not enumerated in Section 3 of the Act, supra. This motion was denied.

Two extended hearings were held, which included both oral and deposition testimony from medical experts, hereafter summarized. The trial judge excused failure to give statutory written notice because respondents had knowledge of the occurrence and were not prejudiced by failure. The court found claimant sustained accidental personal injury during performance of work, from exposure to contaminated dust which caused or aggravated histoplasmosis and resulted in 50% permanent partial disability to the body as a whole. On appeal to State Industrial Court en banc, this order was affirmed by divided [3–2] vote.

Stedman's Medical Dictionary, [3rd L. Ed.], p. 581, defines histoplasmosis as a human infection acquired by inhalation of spores of the fungus in dust, particularly from soils contaminated by dejecta of fowls, birds, or bats.

Testimony of two physicians, and a doctor of veterinary medicine with doctorate in public health, reflects matters hereafter summarized. Histoplasmosis is a widely occurring common infection, but relatively uncommon as a clinical illness recognizable as causing disability. The disease was recognized in 1905 and first was cultured in 1934. Scope of the disease was recognized following development of a serum test in 1946, and it is estimated fifty million persons within the Mississippi Valley area presently are infected.

Causative organisms are located in soil contaminated by droppings of various animals, and particularly fowls and birds. The disease enters the human body by inhalation of dust which contains spores of fungi into the lungs, and remains associated with defensive [phagocytic] cells throughout the body. In a majority of cases the person is unaware of inhalation

and suffers no debilitating illness. After a short incubation period following heavier inhalation, a mild flu-like or pneumonia-like illness may result. Ordinarily, even severe infections heal spontaneously with nothing more than supportive treatment required.

Although infection ordinarily is expelled from the body, the organisms can remain viable and capable of dissemination for years, when bodily resistance declines from other causes; i. e., leukemia, administration of drugs, or processes which interfere with physical resistance. When heavy exposure occurs the patient may suffer cyanosis, tightness of the chest, unproductive cough, fever, and shortness of breath for weeks or months. The disease attacks the lungs, but causes trouble in other parts of the body [brain, bones] as infection grows. Although chronic histoplasmosis may result in mild illnesses mentioned, the infection remains, and, in an acute or disseminated state incited by interference with bodily resistance, histoplasmosis can be fatal. The disease is treated by controlled intravenous injection of a highly toxic drug.

Respondent, hereinafter the claimant, was a 63-year-old maintenance worker, employed by petitioners, herein the respondents. Employment duties included operation of a Ford tractor [brush hog] mower, and on May 25, 1970, claimant was directed by the supervisor to mow specified lots which were overgrown with grass, sunflowers and high weeds. The weather was dry and windy, mowing created a great deal of dust, and there were many birds and bird nests in the area being mowed.

Prior to this occurrence, claimant never had difficulty with nose, throat, or lungs, and had not suffered breathing problems. During the afternoon, claimant began experiencing extreme thirst, drank excessive amounts of water, and suffered dryness and burning in his nose, throat and lungs, and difficulty in breathing. These difficulties continued through the night and necessitated claimant seeing a physician before reporting for work. Claimant told the foreman of his difficulty after the mowing episode and was advised to go in and see a doctor if feeling too bad. Claimant worked the following day with same complaints, but did not return to work thereafter. Treatment continued from this doctor for a week, during which injections for a cold were administered without relief. Claimant has never been able to work since the third day following this occurrence.

On July 1, 1970, claimant saw Dr. R. F. R., related history of occurrence on job, illness and treatment by other doctors, continuing complaints of sore throat and tongue, and general debility with progressively severe symptoms. Examination revealed lesions of tongue extending into posterior pharynx. Succeeding treatments were unsuccessful, cultures attempted to identify any organisms in area were unsuccessful, and by July 22nd claimant's deteriorating condition resulted in Dr. R. F. R. referring claimant to a specialist [Dr. R. M.]. Claimant was hospitalized for laryngoscopy and biopsy of nodules on right vocal cord and tongue lesions.

Claimant was discharged after three days and removed to another hospital for treatment. A specialist, Dr. H. G. M., was called into consultation following biopsy of tongue, which revealed presence of histoplasmosis. From tests and X-rays, this physician ascertained presence of calcification in the lungs, indicating existence of infection for six months. Upon this basis the physician testified it was possible, but considered improbable, claimant contracted the disease at the time and in the manner alleged.

Claimant introduced deposition testimony given February 14, 1972, by Dr. R. F. R., who first saw claimant July 1, 1970, and initiated consultation and research which established presence of this disease. This doctor continued to attend and treat claimant over entire period. Based upon history of exposure, subsequent diagnostic findings and ensuing treatment, this physician testified there was little doubt exposure and infection occurred as claimed. Subsequent

course of illness, and eventual findings based upon diagnosis and biopsies from different sites, indicated dissemination of the disease was compatible with date of exposure, normal incubation period, and illness. As a result of exposure and disease, claimant was permanently totally disabled.

The only real conflict in the medical evidence concerning cause of illness results from evidence related to finding calcification in claimant's lungs. In the opinion of two experts, it would be unusual to find this condition in less than six months following infection. However, on cross-examination, one doctor stated the incubation period for acute histoplasmosis ranged between five to twenty days, and lung congestion should indicate something was wrong. The doctor also fixed two months minimum for calcification of the lungs. Neither expert evaluated extent of claimant's resulting disability.

Respondent also introduced a medical report of Dr. C. A. G., based upon physical examination and X-ray studies. This physician agreed both with diagnosis and treatment, but was of the opinion claimant had recovered, and had suffered no permanent partial disability as a result of this "rather remarkable disease."

■ Respondents first contend the Act, supra, was intended to provide compensation only for accidental injury in hazardous employment and occupational diseases enumerated in § 3(16), which cannot include diseases contracted in course of ordinary living. Thus, since claimant was afflicted by disease not mentioned in the statute, State Industrial Court had no jurisdiction to adjudicate this claim.

This argument need not be noted, other than to observe there was no claim of occupational disease, nor medical evidence supporting this theory. Medical testimony only suggested possible sources of infection. And, when viewed in proper context, particularly in view of wide-spread, infectious nature of histoplasmosis, the evidence negates consideration of the disease as an occupational hazard.

■ Two further contentions argue claimant suffered from a cold, which is neither a compensable disease nor an accidental injury within definition of the Act, supra. The argument attacks sufficiency of the evidence to show histoplasmosis spores present in the area of work, or proof this was the only place the disease could have been contracted, rather than from exposure from some other source or activity. Thus, absent direct proof of connection between employment and disease, respondents insist there was no conclusive medical proof of accident, but merely a physician's presumption that illness resulted from general exposure.

Tenor of argument concerning alleged insufficiency of the evidence necessitates extended review of medical evidence. The evidence was not that claimant caught a cold, but rather, immediately following exposure, claimant evidenced classical symptoms of histoplasmatic infection, but was treated for a cold before specialists ascertained the cause of illness.

■ Under the Act [§ 11], and settled decisional law, compensation is allowable for accidental injury which results from accidental means which are unexpected or undesigned, or which result from miscalculation or mischance concerning effect of voluntary action. In determining whether accidental injury has occurred, the Act is not given a narrow, restricted meaning, but must receive a broad and liberal interpretation to effect intent of the Act. Armour & Co. v. Worden, 189 Okl. 106, 114 P.2d 173. Any reasonable doubt whether injury arose out of and in course of employment should be resolved in favor of an injured workman. In Re Martin [Okl.], 452 P.2d 785.

What constitutes accidental injury within meaning of the Act has been stated many times. An oft-quoted definition appears in Andrews Mining & Milling Co. v. Atkinson, 192 Okl. 322, 135 P.2d 960:

"An 'accident' is an event happening without any human agency, or if happening through human agency, an event

which, under the circumstances, is unusual and not expected to the person to whom it happens. In the term 'accidental injuries', the substantive 'injuries' expresses the notion of a thing or event, that is, the wrong or damage done to the person, while 'accidental' qualifies and describes the noun by ascribing to 'injuries' a quality or condition of happening, or coming by chance or without design, taking place unexpectedly or unintentionally."

Also see Vaughn & Rush v. Stump, 156 Okl. 125, 9 P.2d 764 [injury to ear from noise]; Quality Milk Products v. Linde, 159 Okl. 256, 15 P.2d 58 [inhalation of alcohol fumes while painting]; Johnson Oil Refining Co. v. Guthrie, 167 Okl. 83, 27 P. 2d 814 [inhalation of gas fumes]. In each instance, injury sustained was held to be accidental.

The difference which results from application of this rule may be observed by comparison with decisions which involved disability caused by internal bacterial condition weakened by work. Black, Sivalls & Bryson, Inc. v. Silvey, 184 Okl. 176, 86 P. 2d 327; Cardwell Mfg. Co. v. Thomas, 192 Okl. 143, 134 P.2d 562; Barnett v. Interstate Oil Pipeline Co. [Okl.], 294 P.2d 553.

■ Medical findings, ascertained from examination of claimant on July 1, 1970, were consistent with history of exposure to contamination and ensuing debilitating effects. This was basis of the physician's conclusion that there was little doubt exposure to histoplasmatic material was compatible with history of dust exposure, with the mouth and throat the likely site for entry of infection.

We have noted evidentiary matters concerning claimant's duties and working conditions, absence of prior physical difficulties, facts of exposure and immediate onset of difficulty, with ensuing progression of diagnostically established, disseminated histoplasmosis. This injury was not a designed or expected consequence of the work in which claimant was engaged, and was not categorized as an occupational disease by experts who testified. To the contrary, competent evidence established this injury resulted from unexpected exposure, which occurred at a definite time and caused infection and disability. This evidence measured by factors declared to constitute accidental injury under Atkinson, supra, clearly establishes correctness of the finding claimant sustained accidental injury within meaning and intent of the Act, supra.

See Victory Sparkler & Specialty Co. v. Francks, 147 Md. 368, 128 A. 635, 44 A.L. R. 363, at 371, which differentiates between occupational disease and accidental disease or injury.

■ Evidence which established disability resulted from histoplasmosis was sufficient to support an award based upon finding of accidental injury from exposure to contamination at a definite time. Respondents' evidence indicated claimant had been infected at least six months, but infection could remain dormant a long period before being triggered into activity by a variety of circumstances. The State Industrial Court resolved this conflicting evidence in claimant's favor. Weight and credibility of expert testimony is exclusively for determination of the trier of facts. Blue Bell, Inc. v. Owens [Okl.], 463 P.2d 969. Probative value of medical evidence is for State Industrial Court, which may accept all or part of such evidence, or reject this evidence entirely. Arnold v. J. F. Pritchard & Co. [Okl.], 399 P.2d 481.

■ We have determined the trial court was correct in finding occurrence of accidental injury. Under our decisions, the fact claimant suffered prior infection of the disease as reflected by respondents' evidence would not be decisive. Where accidental injury aggravates or lights up a pre-existing condition, the resulting disability is compensable. National Zinc Co. v. Cichon [Okl.], 364 P.2d 699, and cases cited. Under either hypothesis, the trial court's finding of accidental injury, which resulted in disability, is sustained by competent evidence.

Matters discussed are dispositive of controlling issues. Other arguments concerning weight of the evidence, supported by decisions from other courts, do not require discussion.

Award sustained.

WILLIAMS, C. J., and DAVISON, IRWIN, BERRY, LAVENDER, SIMMS and DOOLIN, JJ., concur.

HODGES, V. C. J., dissents.