**UTICA SQUARE SALON OF BEAUTY, and Sentry Insurance, Petitioners,**

v.

**Lyndal K. BARRON, Truck Insurance Exchange and State Industrial Court, Respondents.**

**No. 51444.**

Court of Appeals of Oklahoma, Division 2.

April 10, 1979.

Rehearing Denied April 30, 1979.

Released for Publication By Order of Court of Appeals May 24, 1979.

Bruce O. Taliaferro, Tulsa, for petitioners.

Gary D. Madison, Tulsa, for respondent Lyndal K. Barron.

Thomas E. Steichen, McGivern, Scott & Steichen, Tulsa, for respondent Truck Ins. Exchange.

BRIGHTMIRE, Judge.

A 33-year-old hairdresser, Lyndal Barron, was found by the State Industrial Court to have sustained total permanent disability as a result of inhaling hair spray and other chemicals on November 12, 1974. An order was entered dismissing an earlier insurance carrier, Truck Insurance Exchange, from the case and awarding Barron a 500-week order against petitioners, Utica Square Salon of Beauty and its carrier, Sentry Insurance Company. From an en banc order affirming the trial judge, petitioners appeal contending the lower court order is illegal, contrary to the evidence, excessive, and not against Truck Insurance Exchange as it should have been.

## I

The claimant had worked as a beautician for about 13 years—with Utica Square Salon of Beauty—during which time he was exposed daily to the various chemicals including ammonia, hair spray, dyes, bleaches, peroxides and hair lacquer. As a child he had an asthmatic problem which disappeared about the age of 12. In 1970, Barron saw an allergy specialist, Dr. Horowitz, several times complaining of "tiredness" in his chest which seemed to get worse as time passed. In early November 1974, the women's hair stylist's chest condition began to worsen precipitously. He had been doing a lot of hair bleaching, he said, inhaling a lot of fumes from the peroxide and ammonia preparations. And then, referring to November 14 around 1500, Barron said, "I had frosted a woman's hair that day, and I just barely finished combing her out and I couldn't even apologize to her because I couldn't get my breath enough to talk, and so I would assume," he added, "breathing the fumes from the bleach I was using is what caused me to get worse that day." "It was," said Barron, "just like someone was choking you . . . just like I was choking to death . . . I couldn't hardly talk at all . . . ."

Barron left the shop and went to see Horowitz who started giving the breathless patient oxygen and some medication and then had a nurse take him "straight to the hospital" where he was placed in an intensive care unit. Following his discharge from the hospital a week later, he remained in bed at home using a breathing machine and taking medicines prescribed by Horowitz. Today he is alive, but the physicians who have examined him agree he is totally disabled, and they expect him to stay that way.

## II

Petitioners first of all say there is no evidence to support a finding that Barron sustained an accidental injury arising out of his employment on November 12, 1974. Underlying this conclusion is a concept of law which requires the claimant to establish "trauma" in order to have a compensable "personal injury"; and here, they insist, Barron has no trauma but at most an occu-

pational disease not included among those covered by the Workmen's Compensation Law.[1] For authority they point to *City of Nichols Hills v. Hill*, Okl., 534 P.2d 931 (1975)—a case they say possesses "crucial factual distinctions," and, though it features an unhelpful result (an award to claimant was sustained), it contains a legal analysis which undermines the conclusion reached by the trial court in this case. More specifically, they focus on the meaning of the term "accidental" as fashioned by the *Hill* court, namely, "a quality or condition or happening, or coming by chance or without design, taking place unexpectedly or unintentionally," and conclude that the facts here—pulmonary problems dating back to 1970 coupled with a 13-year occupational exposure to sundry toxic chemicals—dispel the notion that Barron's injury was accidental. The injury, they insist, did not result from a condition or happening which came about unexpectedly or unintentionally.

It would take considerably more evidence than appears in the record here to convince us that the grave happening on November 14 was either by design, expected, or intentionally induced. It was not until after his near collapse on that date that Barron's physicians determined his pulmonic distress was causally connected with, and the cumulative effect of, claimant's inhalation of hairdressing chemicals through the years. Certainly Barron did not know his lungs were being injured daily by the misty fumes he breathed. His experience is not significantly dissimilar from that of the disabled claimant in *Johnson Oil Refining Co. v. Guthrie*, 167 Okl. 83, 27 P.2d 814 (1933) who one day became violently ill at work, it turned out, from the cumulative effect of inhaling "gas fumes and coke dust" on the job over a period of time. Since the disability occurred on an identifiable date, it was, concluded the high court, attributable to an "accidental personal injury" within the meaning of the Workmen's Compensation Law, as distinguished from an occupational disease.

Supplementing this "fixed date" concept in toxic fume inhalation cases is what is referred to as the "awareness or discovery principal" articulated in *Munsingwear, Inc. v. Tullis*, Okl., 557 P.2d 899 (1976) which contemplates that the accidental injury resulting from prolonged inhalation of toxic fumes is deemed to occur on the date the injury manifests itself through the sudden onset of disabling symptoms unless claimant was aware before then of the nature, extent, and cause of the injury. While *Munsingwear* dealt with a statute of limitations problem, it recognized without any apparent difficulty that an accidental injury may be the culmination of an insidious work-related insult to some part of the body.

The evidence here supports the trial court's finding that Barron sustained a compensable accidental injury.

### III

Petitioners' second contention is that Truck Insurance Exchange should not have been dismissed from the case but should have been retained and ordered to pay a proportionate share of the award. The argument is one advanced primarily by Sentry Insurance Company and is based on the fact that it did not issue a policy covering claimant until February 1, 1974—only 10 months before the accidental injury—and prior to that time, Truck Insurance Exchange had the coverage. Because of the "hybrid" nature of Barron's injury—that is, one that develops gradually like an occupational disease but disables suddenly as though from an accident—Sentry says Truck "is legally obligated to contribute that portion of the claimant's . . . benefits for which it is determined to be responsible during its period of policy coverage ending on January 31, 1974," and for this notion cites a Mississippi decision.

The contention is without merit. If an accident—in the sense of a sudden traumatic injury producing event, such as cutting

1. 85 O.S.1971 § 2.

off a finger with a knife—had occurred on November 14, 1974, it cannot be doubted that Sentry would be obliged to bear the entire compensation burden. But, does the fact that Barron's accidental injury was the culmination of a long term daily trauma alter Sentry's liability? It is not readily apparent to us how it could. From the standpoint of the sculptured fiction—that an accidental injury occurred on November 14—Sentry is, of course, solely responsible for the coverage. And, similarly, to the extent the injury is analogous to an occupational disease, the public policy of this state as expressed in 85 O.S.1971 § 11(3) is that "the employer in whose employment the employee was last injuriously exposed to the hazards of such disease and the insurance carrier, if any, on the risk when such employee was last so exposed   .   .   .   shall alone be liable therefore [*sic*], without right to contribution from any prior employer or insurance carrier   .   .   .   .."

No reason occurs to us why this common sense policy statement, formulated to escape the onerous litigation potential of having the courts try and decide what carrier was liable for how much of a given cumulative illness or disease cataloged statutorily as occupational, should not apply to cumulative accidental injuries. Doubtless, the statutory solution reflects legislative recognition of the enormous time and expense which would be required in trying to allocate coverage or apportion liability among two or more consecutive carriers—a burden exceeded only by the likely futility of achieving a just result.

### IV

We hold the trial court correctly declined to attempt any allocation of coverage and otherwise committed no error. The order appealed is therefore affirmed.

BACON, P. J., and NEPTUNE, J., concur.