**KERR GLASS COMPANY and CNA Insurance Company, Petitioners,**

v.

**David Dale WILSON, Ball Incon, Travelers Indemnity Company and The Workers' Compensation Court, Respondents.**

**Nos. 81877, 82191.**

Court of Appeals of Oklahoma, Division No. 1.

May 3, 1994.

Rehearing Denied June 7, 1994.

Certiorari Denied July 25, 1994.

---

Ronald E. Hignight, Tulsa, for petitioners.

Pat A. Padgett, Tulsa, for respondents Ball–Incon/Travelers.

## *OPINION*

HANSEN, Judge:

Petitioners Kerr Glass and CNA Insurance Company (collectively Kerr), seek review of a Workers' Compensation Court order finding Respondent David Wilson (Claimant) had sustained compensable injuries and appor-

tioning compensation between Kerr and Respondents, Ball Incon Glass and Travelers Insurance Company (collectively Ball).

Claimant was employed by Kerr for approximately nine and one half years until February 28, 1992. On that date, Ball took over operation of the Kerr plant, however Claimant's work conditions remained the same. Claimant filed his claim on September 17, 1992.

The claim lists Ball Incon as employer and alleges "strain/sprain" injuries to both feet from "standing for long periods of time on glass pieces". Claimant provided the date of last exposure, August 23, 1992, as the date of accident.[1]

Approximately three months after its entry of appearance, Ball moved to implead Kerr. Ball asserted in support of its motion that Claimant had testified to cumulative trauma injury during employment with Kerr, and further asserted such injury was capable of apportionment between employers. Kerr entered its appearance shortly thereafter, but subsequently moved to dismiss the claim as to itself.

■ In its order, the trial court first denied Kerr's motion to dismiss. The court found that on August 23, 1992, Claimant sustained a compensable injury to the right foot (ankle) as the result of cumulative trauma[2], causing four percent permanent partial disability. The court apportioned payment of the award, ordering Kerr to pay ninety five percent and Ball the remaining five percent. The court further found the claim as to Claimant's left foot resulted from specific trauma in 1986 and was barred by the statute of limitations, and that Claimant became aware of his cumulative trauma injuries in April, 1990.

■ Kerr now seeks review of the Workers' Compensation Court order.[3] Kerr does not contest that Claimant sustained a compensable injury, but contends liability for such a cumulative trauma injury should be determined under the "last injurious exposure rule". Kerr asserts, alternatively, that if liability is to be apportioned, it should be based on medical evidence of the degree of impairment caused by each employer, and not on the basis of time employed or some version of the "awareness doctrine".

■ More specifically, Kerr contends cumulative trauma claims, which share the same limitations provision as occupational diseases, should have applied the same "last injurious exposure rule" used to determine liability among successive employers for occupational disease claims.

The applicable statute of limitations, which is set forth at 85 O.S.1991 § 43(A), provides, in relevant part:

> ... with respect to disease or injury caused by repeated trauma causally connected with employment, a claim may be filed within two (2) years of the date of last trauma or hazardous exposure.

Kerr suggests § 43(A) be read with 85 O.S.1991 § 11(4), which codifies the "last injurious exposure rule", and which Kerr asserts is instructive as to imposition of liability upon employers for cumulative trauma injuries. Section 11(4) directs that:

> Where compensation is payable for an *occupational disease*, the employer in whose employment the employee was *last injuriously exposed* to the hazards of such disease and the insurance carrier, if any, on the risk when such employee was last so exposed under such employer, shall alone be liable therefor, without right to contribution from any prior employer or insurance carrier, ... (emphasis added).

---

1. The record reflects Claimant quit working for Ball on August 23, 1992, because of a back injury which is being separately claimed.

2. An accidental injury may result either from one particular event—a single event injury—or from the cumulative effect of repeated micro-trauma occurring over an extended period of time—a cumulative trauma injury. *McDonald v. Time–DC Inc.*, 773 P.2d 1252 (Okla.1989).

3. Claimant filed a Cross–Petition for Review alleging trial court error in finding his claim barred by the statute of limitations and in apportioning the award; however, Claimant did not file a brief in support of his allegations and they are deemed abandoned. *James v. Beckwith*, 805 P.2d 117 (Okla.App.1990).

The Court of Appeals has previously considered arguments similar to Kerr's contentions regarding §§ 11(4) and 43(A). Kerr would have us follow the reasoning in *Mid–Continent Casualty Co. v. Bradley*, 855 P.2d 145 (Okla.App.1993). In *Mid–Continent Casualty*, the Court of Appeals held the date of injury in a cumulative trauma case, for the purpose of fixing liability of the employer and insurance carrier, if any, is the date of last trauma.

However, the *Mid–Continent Casualty* Court did not directly address the question of apportionment, because the issue posed by the Workers' Compensation Court order was which of two consecutive insurance carriers would be solely liable for compensation. The only question was whether to apply the "awareness doctrine", or to use the date of last trauma to impose this sole liability.

The Court of Appeals dealt more directly with the question of apportionment of liability for cumulative trauma injuries in *Pauley v. Lummus Construction*, 836 P.2d 692 (Okla.App.1992), and in *Lummus Construction v. Vancourt*, 838 P.2d 43 (Okla.App. 1992).[4]

In both *Pauley* and *Vancourt*, the Court of Appeals rejected application of the "last injurious exposure rule" to cumulative trauma injuries, and instead found apportionment of liability to be appropriate. Both decisions also rely on *Parks v. Flint Steel Co.*, 755 P.2d 680 (Okla.1988).

In *Parks*, the Supreme Court held 85 O.S. 1991 § 11(4), with its last injurious exposure provision, was designed to apply in situations where an employee contracts an "occupational disease", and found the section inapplicable to cumulative trauma cases, when the injury occurred in a claimant's prior employment.

The Supreme Court also did not accept the argument in *Parks* that the last injurious exposure rule in § 11(4) should be applied to cumulative trauma injuries by analogy. The analogy was purported to apply because "for all practical purposes, cumulative effect accidents and occupational diseases are essentially the same thing with but a different name". In discussing the legal authority cited in *Parks*, the Supreme Court, while not expressly overruling the Court of Appeals decision in *Utica Square Salon of Beauty v. Barron*, 595 P.2d 459 (Okla.App.1979), unfavorably viewed the Court of Appeal's use of such an analogy in that case.

As noted in *Pauley v. Lummus Construction*, "[t]he Legislature has expressly limited application of the last injurious exposure rule to occupational disease". In the same enactment[5] by which the Legislature amended § 43 to provide a two year limitation period from last trauma for cumulative trauma injuries, or from last exposure for occupational disease, the Legislature also amended § 11, but did not make the "last injurious exposure rule" applicable to cumulative trauma injuries. If the Legislature had intended § 11(4) to apply to cumulative trauma injuries, it would have so provided by expressly amending that section.

In *B.F. Goodrich Co. v. Williams*, 755 P.2d 676 (Okla.1988), the Supreme Court applied the maxim *expressio unius est exclusio alterius*[6] to find that the "awareness doctrine" was limited to those occupational diseases specifically mentioned in § 43(A). Applying that maxim here to § 11(4), we find the Legislature intended to limit application of the "last injurious exposure rule" to occupational disease claims. Kerr's public policy arguments for extension of the rule to cumulative trauma injuries are more properly for consideration by the Legislature.

The Workers' Compensation Court did not err in refusing to apply the "last injurious exposure rule" to the claim here for cumulative trauma injuries. Apportionment was appropriate and supported by competent evidence of record. *Parks v. Norman Municipal Hospital*, 684 P.2d 548 (Okla.1984).

---

4. See also, *Dunaway Manor Nursing Home v. Stith*, Appeal No. 78,316; decided December 1, 1992; cert. denied May 26, 1993 (unpublished).

5. Laws 1985, c. 266, §§ 2 and 4, eff. Nov. 1, 1985.

6. A maxim of statutory interpretation meaning that the expression of one thing is the exclusion of another. *Black's Law Dictionary* 581 (6th ed. 1990).

■ Claimant testified he began experiencing pain in his feet while working for Kerr and that the pain continued while he worked for Ball. Claimant's medical expert, Dr. H., opined that Claimant sustained a ten percent impairment of each foot, which "resulted directly from his standing on his feet constantly throughout each work day while employed at the Ball Incon facility ...". Additionally, the parties stipulated that if Dr. H. had been present at trial, he would have testified that ninety five percent of Claimant's disability was attributable to employment at Kerr and five percent to employment at Ball. This evidence is sufficient to support liability for both Kerr and Ball, and apportionment of that liability.

Kerr contends, alternatively, that if liability is to be apportioned, apportionment should be based upon competent probative medical opinion as to the degree of impairment caused by job tasks with each employer, and not on the proportionate time employed by the respective employers.

■ We agree apportionment should be based on competent medical evidence and not by a pro rata formula based upon length of respective employment. In *Lummus Construction v. Vancourt*, 838 P.2d at 43 (footnote 1), the Court of Appeals found a medical expert's apportionment formula—percentage of disability divided by the number of years employed as a pipe fitter—to be arbitrary and incompetent. The Court of Appeals noted there that the expert's apportionment was deficient in that it was not based on "any scientific criteria, the AMA Guides or any legal precept".

In the present matter, the medical experts endorsed by respondents both believed Claimant had sustained no impairment of a work related etiology, and thus attributed no disability to either employer.[7] Dr. H., Claimant's medical expert, did not apportion Claimant's impairment in the report admitted into evidence. According to the statement of Claimant's counsel at trial, Dr. H's stipulated testimony was based on "the number of months worked for each employer".

■ It seems clear Dr. H's apportionment was not based on any scientific criteria, the AMA Guidelines or any legal precept. Once Claimant admitted cumulative trauma injury possibly arising in a previous employment, he had the burden of proof to establish the extent of any previous disability. *Lummus Construction v. Vancourt*, 838 P.2d at 44.

Claimant established, by his own testimony and with medical evidence, that some injury occurred during his employment with both Kerr and Ball, but we find a lack of competent evidence to establish the extent of that injury so that apportionment may be properly determined.

Finally, Kerr asserts that "imposition of liability among former employers should not be imposed by a modified version of the awareness doctrine and should be imposed by judicial fiat based upon notice to the former employer". With respect to this proposition, Kerr prays in conclusion that this Court "set a limitation period for the extension of liability as to remote employers and the Petitioners based upon the notice provisions accorded by Title 85 O.S.Ann. § 24.2".

■ Limitation periods are creatures of statute, not common law. *Lake v. Lietch*, 550 P.2d 935 (Okla.1976). Therefore, limitation periods are established by legislation and not "judicial fiat". Further, Kerr alleges no harm it has suffered from the application of 85 O.S.1991 § 43, the relevant statute of limitations in this matter, nor from 85 O.S. 1991 § 24.2, which mandates notice by the injured employee to his or her employer. We will not normally decide abstract or hypothetical questions, and find no support for an exception from that rule here.[8] See,

---

7. Ball's medical expert, Dr. F., further opined that:

> ... the entire difficulties that he is having are during his tenure of employment with Kerr Glass rather than Ball Incon. He only worked for Ball Incon for six months whereas he worked for Kerr Glass in excess of nine and a half years.

8. The Supreme Court denied Kerr's motion for retention, which was based in part on Kerr's argument that this cause presented a question of substantial public interest. Broad public interest is a recognized exception to the mootness doctrine, *Marquette v. Marquette*, 686 P.2d 990 (Okla.App.1984), but we must defer to the judg-

*Morton v. Adair County Excise Board,* 780 P.2d 707 (Okla.1989).

The order of the Workers' Compensation Court is SUSTAINED IN PART and VACATED IN PART and this matter is REMANDED for further action consistent with this opinion.

JONES, P.J., concurs.

ADAMS, J., concurs in part and dissents in part, with separate opinion.

ADAMS, Judge, concurring in part and dissenting in part:

I fully concur with the majority opinion in all respects except the decision to vacate the trial court's apportionment of liability and remand for an apportionment based upon additional medical evidence. On the issue of proper medical evidence upon which to base apportionment, there is a critical difference between the record in this case and the record in *Lummus Construction v. Vancourt,* 838 P.2d 43 (Okla.App.1992).

In *Lummus,* the trial court did not apportion although the claimant admitted a pre-existing injury from previous employment. The employer had offered medical expert evidence which recommended apportioning the claimant's impairment based on the ratio of the length of time working for the particular employer to the number of years working in the industry. The expert testified that this recommendation was based on his sense of "fairness" and professed no basis for his conclusion in scientific or medical principles.

*Lummus* noted that such medical evidence, *i.e.,* evidence admittedly based on the expert's sense of "fairness" and not on any scientific or medical principle, was "arbitrary and incompetent," and that the trial court did not err in failing to follow that apportionment theory. At least in the opinion of this writer, *Lummus* does *not* stand for the proposition

that apportionment may not be based on relative length of employment *if such an apportionment is based upon proper medical evidence.*

The record here is far different. The only medical evidence on apportionment is the parties' stipulation that if Dr. H (Claimant's medical expert) testified he would attribute ninety-five percent of Claimant's impairment to one employer and five percent to the other. The trial court's order followed that testimony. Dr. H was never questioned about the basis for this opinion. Unlike the record in *Lummus,* this record does not indicate that Dr. H's opinion was *not* based on some scientific or medical principle.[1]

We must treat this record as if Dr. H appeared and testified as the parties stipulated. Under 12 O.S.1991 § 2705, Dr. H was not required to disclose the underlying data and facts upon which his opinion was based unless the trial court required otherwise or he was questioned on cross-examination. Neither occurred here, and I do not believe his testimony on this issue should be rejected as a basis for the trial court's order simply because the majority presumes he had no scientific or medical basis for that testimony.

I would sustain the trial court's order in its entirety because it is supported by competent evidence. I respectfully dissent to that portion of the majority opinion which does otherwise.

ment of the Supreme Court implicitly finding no such interest.

1. The majority suggests that Dr. H's testimony was based on the number of months worked because Claimant's counsel indicated that would be the basis when he offered the stipulation. However, the transcript does not indicate that

stipulation was accepted. Rather, after some off-the-record discussion, the parties stipulated that Dr. H would testify to a 95/5 apportionment. Even if Counsel's explanation is considered, there is no indication that Dr. H did not have a valid scientific or medical basis for choosing such a method.