2004 OK CIV APP 17

**NATIONWIDE ENVIRONMENTAL SERVICES, INC., Compsource Oklahoma, f/k/a State Insurance Fund, and/or National American Insurance Company, Petitioners,**

**v.**

**Kenneth Dale BEASLEY and the Workers' Compensation Court, Respondents.**

**Nos. 98,950, 98,957.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Oct. 21, 2003.

Rehearing Denied Dec. 1, 2003.

Certiorari Denied Feb. 9, 2004.

Donald A. Bullard, Bullard & Hoehner, P.C., Michael Mancillas, Oklahoma City, OK, for Petitioners.

E.W. Keller, Keller, Keller & Dalton Oklahoma City, OK, for Respondents.

Opinion by JERRY L. GOODMAN, Presiding Judge:

¶ 1 Employer Nationwide Environmental Services, Inc., and Insurer National American Insurance Company (NAIC) seek our review of the February 19, 2003, order of a three-judge panel which affirmed the trial court's December 6, 2002, order granting benefits to Employee Kenneth Beasley for injuries he sustained while working for Employer. Based upon our review of the facts and applicable law, we sustain the order under review.

## FACTS

¶ 2 Employee filed a Form 3 on March 12, 2001, alleging he developed a brain tumor after being exposed to, and splashed with, toxic chemicals while working for Employer. Employer denied the injury was job related.

¶ 3 Employee began working for Employer in September 1995 as a site technician at a toxic waste site managed by Employer. His job duties included site maintenance and repair. During this time it is undisputed that he was exposed to toxic waste materials while employed in this capacity. His last exposure to the site was February 2001, after his brain tumor was discovered. Employee contends the tumor was the result of his exposure to toxic waste. Employer, who had two different insurers providing workers' compensation coverage during the period of Employee's tenure, denied any causal connection between Employee's exposure to the chemicals and his subsequent cancer.

¶ 4 An evidentiary hearing was held February 14 and August 16, 2002. The evidence showed that prior to beginning work with Employer in September 1995, Employee was medically tested for any pre-existing medical conditions. None were found. Employee also had no familial history of cancer or tumors. Employee testified that his job duties involved maintenance and cleanup at

Employer's toxic waste facility in Criner, Oklahoma. He testified that between 20–50,000 50–gallon barrels of toxic waste chemicals were buried at the site. As the barrels leaked, the liquid was pumped out of the ground into separators, which in turn allowed the lighter toxic chemicals to be separated from the heavy toxic metals. The residue would ultimately be sent to Houston, Texas, for incineration and disposal. However, because the pumps leaked, the pipes burst, and the site often experienced electrical or mechanical problems, Employee was often exposed to, among other things, benzene, arsenic, acetone, cadmium, pesticides, tetrachlorethylene, solvents, and heavy metals. There is no evidence Employee was exposed to radiation.

¶ 5 In May 1997 Employee was conducting routine testing when an open valve spewed toxic chemicals into Employee's face. Despite the protective eyewear he was wearing, some of the liquid entered Employee's left eye. He washed it out and later reported to the emergency room with complaints of severe eye irritation. He was treated conservatively and, after a few days, had no further eye difficulties.

¶ 6 More than four years later, Employee was again working around the holding tanks when he testified he inhaled fumes and fainted. He was transported by ambulance to the emergency room, where doctors discovered a large brain tumor behind his left eye. He was referred to a surgeon, who removed most, but not all, of the tumor. Employee has undergone chemotherapy to try and halt the continued growth of the tumor.

¶ 7 We note Employee's rather alarming testimony that he was constantly exposed to various toxic chemicals. He testified that though he was provided protective chemical suits, they were often of the wrong size, and would tear easily. He further testified the protective suits' oxygen tanks were often empty, necessitating removal of the suits in order to breathe.

¶ 8 The deposition testimony and medical records of Employee's treating surgeon and expert witness were admitted into evidence over the probative value objection of Employer. Employer's experts' deposition and medical reports, which denied any causal link between the introduction of toxic chemicals into the left eye and the development of a tumor behind that eye a few years later, were admitted into evidence over Employee's probative value objection.

¶ 9 At the conclusion of the evidentiary hearing, the trial court, in a detailed and well-crafted order filed December 6, 2002, found Employee's injuries were causally related to his employment and found Employee to be permanently totally disabled (PTD). The trial court ordered Employer to pay Employee temporary total disability (TTD) benefits from June 11, 2001, to December 3, 2002. The trial court found NAIC, Employer's insurer, had coverage from October 2, 1996, until September 30, 1998, which covered the incident of direct exposure to the left eye in May 1997. The trial court also found CompSource provided workers' compensation coverage from October 1, 1998, to the date of last exposure, February 7, 2001. The trial court apportioned liability between the two carriers at 50 percent each.

¶ 10 Employer sought review from a three-judge panel, which entered an order, filed February 19, 2003, unanimously affirming the trial court's order. However, on March 24, 2003, a three-judge panel vacated the February 19, 2003, order in its entirety. In its place, the panel entered a new order, filed March 26, 2003. The new order corrected some dates and factual misstatements to better reflect the record.[1] Both Employer's current workers' compensation carrier CompSource and its former carrier NAIC filed an appeal. NAIC's appeal No. 98,957 was consolidated with Employer's appeal, under surviving appeal No. 98,950.

1. The order corrected an error in the trial court's first paragraph, which erroneously stated the splash injury was to the right eye. The three-judge panel's order also modified the start date of the accrued period of temporary total disability from June 11, 2001, to December 4, 2002, to reflect the fact that the PTD award would begin following the expiration of the TTD award the previous day. The three-judge panel's order specifically stated that the rest of the trial court's order was affirmed.

## ANALYSIS

■ ¶ 11 Both Employer and NAIC's first proposition of error is that there is insufficient evidence to support the trial court's conclusion that Employee's exposure to the chemicals caused the brain tumor. Essentially, both ask us to reweigh the evidence. Employer's appellate brief is composed primarily of extensive recitation of the medical testimony, medical treatises, and argument adduced at trial. Employer's sole argument is that Employee's experts' opinions did not comply with the threshold evidentiary requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); and *Christian v. Gray*, 2003 OK 10, 65 P.3d 591, or with 85 O.S.2001 § 17(A)(1).[2] In short, Employer asks this court to review the medical evidence already presented to the trial court, determine that the evidence does not meet the scientific validity tests set out in those cases cited above, and hold that Employee's evidence is therefore incompetent. We decline to do so.

■ ¶ 12 We do not weigh the evidence, but canvass the facts only for the purpose of ascertaining whether the tribunal's decision is supported by competent evidence. *Parks v. Norman Mun. Hosp.*, 1984 OK 53, 684 P.2d 548. The existence of evidence supporting Employer's claim is immaterial, because appellate review is confined to a search for any competent evidence which could support the tribunal's order. *Owings v. Pool Well Serv.*, 1992 OK 159, 843 P.2d 380. The record, as quoted elsewhere in this opinion, reveals competent evidence to support the trial court's decision that Employee sustained a compensable injury. The fact that Employer presented additional evidence that could have supported a finding in its favor is immaterial.

¶ 13 Further, *Young v. Neely*, 1960 OK 129, 353 P.2d 111, held that an injury may be proved either by direct or circumstantial evidence alone. Citing *Marby Construction Co.*

v. *Mitchell*, 1955 OK 213, 288 P.2d 1108, 1110, the *Young* court stated:

In a workmen's compensation case, it is not required that the claimant shall establish his right to an award by direct evidence alone, or that he produce an eyewitness to the accident. Circumstantial evidence may be used to establish the claim, and it is not necessary that the circumstantial evidence should rise to that degree of certainty as to exclude every reasonable conclusion other than that found by the trial court.

¶ 14 More specifically, however, Dr. Francel, the surgeon who operated on Employee's tumor, testified about the causal connection between the chemical splash to the eye and the subsequent discovery of the brain tumor behind the same eye:

I think it is more than a coincidence that the patient had development of his tumor on the left side as well and in the temporal area which would be right behind this toxic exposure. This has really placed him at risk that potentially toxic exposure has caused his particular presentation of gliomatosis cerebri. A direct correlation is hard to prove but, again, I think it is more than coincidence that we see this.

. . . .

I actually worked for some time just to get exposure in a cancer research lab when I was actually in college. And, you know, the whole background of induction and promotion of tumors strongly relates a lot of it to chemicals and chemical exposure and, also, to radiation.

. . . .

Q. But you can't say within a reasonable degree of medical certainty that it's related, can you?

A. Well, I think it's probable it is, but I would turn it to experts who have more expertise in toxicology to make more statements about it.

. . . .

2. Medical opinions addressing compensability and permanent impairment must be stated within a reasonable degree of medical certainty.

A. I think I said before, as I said, I think it's probable this is his cause of his tumor, and that's all I can say.

Q. But that's based upon the fact that it is your understanding that he had exposures and he has a tumor and that's it?

A. And the fact that it was in the left eye and the tumor developed in the temporal lobe which was right behind his left eye. I thought, again, that was a lot more than coincidence that that could happen.

¶ 15 When again asked about the cause of the tumor, Dr. Francel stated:

I think I'm trying to say it's probable that toxic exposure—I'm not sure if this particular event is his cause or not.

. . . .

My own interpretation would be—within a reasonable degree of medical certainty is a statement that, in my interpretation, would be, "I'm not going to say 100 percent, because you can't say 100 percent, but it is pretty close to that." What I'm saying is a little less than that.

I'm saying that we have a history giving a toxic exposure to chemicals that are known carcinogens. I would say that since this is the only thing in the patient's history, and also given his age, that this is a probable cause of his problems. And that's what he related to me. He said he had repeated exposure to these toxic chemicals, and I thought that it was probable that that was his cause.

¶ 16 We conclude that this testimony alone supports the trial court's finding that there was a direct causal connection between the injury to the left eye and the development of the tumor behind the left eye. This is so even though the surgeon stated that despite years of studying the causes of cancers and tumors, there remains differing opinions within the medical community as to direct causes of cancers.

¶ 17 Employee also sponsored an expert witness, Dr. Jones, an occupational medicine physician. Dr. Jones, who studied toxic chemicals and the results of exposure, opined in his written report, dated June 11, 2001, that:

In my opinion, the patient's exposure to carcinogenic chemicals while employed as a hazardous landfill clean-up technician for Nationwide Environmental Services from September 1995 to February 2001 is the sole cause of his current brain cancer and residual neurologic complications. . . . There is no evidence of any recreational, familial, congenital, or pre-existing risk factors for the development of his current cancer condition. In my opinion, his current condition is solely related to his employment at Nationwide Environment [sic] Services as a hazardous waste-site clean-up technician.

Dr. Jones then opined Employee was permanently totally disabled. Dr. Jones further testified:

A. Based on the patient's history and exam and the research I did on the chemicals that he was exposed to while he was employed at Nationwide Environmental Services, there was no other explanation for the cause of his brain cancer other than the chemical exposures he had received while employed at Nationwide Environmental Services.

Q. Would you tell the Court what carcinogens are?

A. They're chemicals that have been demonstrated to form cancer causing cells in mammals.

Q. And was Mr. Beasley exposed to carcinogen type chemicals?

A. Yes.

Asked again about the cause of the tumor, Dr. Jones testified that:

Based on a reasonable degree of medical certainty, there wasn't any other explanation for his brain cancer.

. . . .

The patient had a large glioma, or glial cell . . . tumor on the left side of his brain. Dr. Francel removed as much of that as he could. It's the type of tumor that has lots of small roots that go out from it, so it's not like you could just wall it off in one lump and take it out.

Having most of the left side of his brain removed, the patient has a residual seizure disorder, problems with thought, judg-

ment, memory, organizational and logical thinking. It's remarkable that you can have that much of the brain removed and still be able to perform basic activities of daily living.

¶ 18 We conclude that Employer's only proposition of error, and National American's first and second propositions of error, have no merit. We find ample evidentiary support in this record to conclude the trial court's decision to award benefits to Employee was predicated upon valid scientific evidence and medical opinion.

### Apportionment

■ ¶ 19 NAIC's third proposition of error is the trial court erred in its apportionment of liability between the two carriers. As noted above, NAIC was providing coverage when Employee sustained his splash injury in 1997. NAIC contends there is no medical evidence whatsoever upon which to base the trial court's apportionment decisions. Neither Employer's current carrier, Comp-Source, nor Employee respond to this proposition of error, and so we address this issue on the basis of NAIC's brief alone.

■ ¶ 20 NAIC is correct in its statement of the law that apportionment should be based on competent medical evidence and not by a pro rata formula based upon length of respective employment. *Kerr Glass Co. v. Wilson,* 1994 OK CIV APP 69, 880 P.2d 414. We note that in the approximately four-year period of time between the May 1997 splash injury and the February 2001 discovery of the tumor, NAIC provided workers' compensation coverage for a little over one year, or until September 1998, and CompSource providing coverage for a little less than two and one-half years, or from October 1998 until February 2001. We also note that there was no conclusive medical testimony establishing the age or growth rate of the tumor. Thus NAIC is unable to show either that the growth rate was regular over the four years, or grew exponentially either just after exposure or just before discovery. Because NAIC cannot show the tumor developed more rapidly during the last two years prior to discovery, when CompSource was providing coverage, we are left with the medical opinion that the tumor began forming after Employee's 1997 exposure but was not discovered until 2001. We therefore hold that the trial court's determination of apportionment is supported by competent evidence.

### Rate of Compensation

■ NAIC's last proposition questions the rate of compensation awarded by the trial court. NAIC claims the rate in effect on the day of the splash injury in 1997 should apply, rather than the rate in effect on Employee's last date of exposure in 2001, just before the tumor was discovered.

¶ 22 We note that the trial court specifically found that Employee "sustained no permanent partial disability to the left eye as a result of said [1997] injury." Instead, the trial court's order stated, as corrected and modified by the order of a three-judge panel, that this claim

> involves frequent and repeated exposures to toxic chemicals over a period of years, following a single event accident on May 20, 1997, when claimant's [left] eye was splashed with liquid containing an unidentified toxic chemical. Claimant's last injurious exposure to any toxic chemicals arising out of and in the course and scope of his employment with Nationwide Environmental Services was February 7, 2001.

Because Employee is being compensated for a brain tumor caused by repeated exposure to toxic chemicals, the pre-trial stipulated TTD rate of $455.70 was correctly used by the trial court. We find no error.

### CONCLUSION

¶ 23 Having resolved all issues preserved for our review, we sustain the order.

¶ 24 SUSTAINED.

REIF, J., and RAPP, J., concur.