**Harry RANKIN, Petitioner,**

v.

**FORD MOTOR COMPANY, Own Risk, and The Workers' Compensation Court, Respondents.**

**No. 85147.**

Supreme Court of Oklahoma.

Sept. 17, 1996.

Wilson Jones, Susan H. Jones, Wilson Jones, P.C., Tulsa, for Petitioner.

Richard D. Koljack, Jr., Gable & Gotwals, Tulsa, for Respondents.

OPINION

WATT, Justice.

Claimant, Rankin, suffered from cumulative trauma to his hands while working for respondent Ford Motor Company. The Workers' Compensation Court, Honorable Kimberly E. West, trial judge, held that the date of Rankin's injury for the purpose of determining Rankin's wage rate was the date Rankin first became aware of his injury, in October 1986. The Court of Appeals, Division 1, reversed the trial court on the ground that the date of Rankin's injury was the date of his last exposure to the conditions causing the trauma, which was March 1, 1993. Ford

---

**3.** For a fuller explanation of my views about dealing with *repeat* bar offenders, see *Wolfe, su-* *pra* note 1 at 437–439.

sought certiorari, which we granted on April 15, 1996.

The parties disagree over whether the date of first awareness of injury or the last exposure to the hazard is used to determine the wage rate because the wage rates used to set disability benefits under 85 O.S. § 21 have risen over time. Where, as here, significant time has passed between first awareness of an injury and last exposure to the hazard that caused it, disability benefits will be higher if the last exposure test is used to determine the "time of the injury" under 85 O.S. § 21.

In its opinion in this appeal, the Court of Appeals relied heavily on another Court of Appeals opinion, *Penny v. Titus, National Union Fire Insurance Company,* 909 P.2d 150 (Okla.App.1995). In *Penny,* a two-to-one opinion, the Court of Appeals majority concluded that when the legislature abrogated the awareness doctrine for statute of limitations purposes in its 1985 amendment to 85 O.S. § 43.A it intended to abrogate it for all purposes. Since the 1985 amendment, 85 O.S. § 43.A has provided in material part as follows:

> ... With respect to disease or injury caused by repeated trauma causally connected with employment, a claim may be filed within two (2) years of the date of last trauma or hazardous exposure....

On the basis of this language, the *Penny* majority held that the awareness doctrine could not be used to determine the "time of the injury" under 85 O.S.1991 § 21. The *Penny* majority also held that, because of the 1985 amendment to 85 O.S. § 43.A, our opinion in *Peabody Galion Corporation v. Workman,* 643 P.2d 312, 316 (Okla.1982), had "lost its symmetry." In *Peabody* we held that the date for establishing the date of injury in a cumulative trauma case is the date of claimant's first awareness of injury.

We disagree with the *Penny* majority's conclusions, and hold that the "time of injury" as that term is used in 85 O.S.1991 § 21 is the date on which claimant first becomes aware of an injury. For the reasons discussed in the balance of this opinion, the *Penny* majority opinion is repudiated and its reasoning expressly disapproved.

In two earlier Court of Appeals opinions, *Mid–Continent Casualty Co. v. Bradley,* 855 P.2d 145 (Okla.App.1993), and *Utica Square Salon of Beauty v. Barron,* 595 P.2d 459 (Okla.App.1979), the Court of Appeals concluded that accidental injuries are analogous to occupational disease cases. We disagree, and expressly reject the reasoning of *Mid–Continent* and *Utica Square.*

Rankin's disability was the result of an accidental injury caused by a series of small injuries called "micro-traumas." These small injuries finally resulted in a discernable injury to Rankin. "Occupational disease" is limited by statute to "only that disease or illness which is due to causes and conditions characteristic of or peculiar to the particular trade, occupation, process or employment in which the employee is exposed to such disease." 85 O.S.1993 Supp. § 3.10; *Peabody Galion Corp. v. Workman,* 643 P.2d 312, 315 (Okla. 1982). Section 3.10 was amended in 1977 to add the foregoing language. In *Peabody Galion* we held that "there is no indication in the 1977 amendments that the purpose of the revised occupational disease definition was to abolish the distinction between the concepts of occupational disease and accidental injury." *Id.* at 315.

The significance of the distinction between accidental injury and occupational disease is that under 85 O.S.1991 § 11.4, "where compensation is payable *for an occupational disease,* the employer in whose employment the employee was last injuriously exposed to the hazards of such disease ... shall alone be liable therefore, without right of contribution from any prior employer." [Emphasis added.] This requirement is ordinarily referred to as the "last exposure doctrine."

The last exposure doctrine applies only in occupational disease cases, not in cumulative trauma cases with regard to wage rate disputes. For statute of limitations purposes, the time to file a claim of this type starts with the date of last exposure. In this case, however, the statute of limitations is not an issue.

Both the legislature and this court have drawn a clear distinction between cumulative trauma cases, which are accidental injuries,

and occupational disease. In *Parks v. Flint Steel Corp.*, 755 P.2d 680 (Okla.1988), Flint Steel relied on The Court of Appeals' *Utica Square* opinion in support of its argument that the last exposure doctrine applied to a micro trauma case, which had resulted in the claimant's hearing loss. We rejected Flint's argument and the *Utica Square* opinion, saying that *Utica Square* was "unpersuasive, distinguishable—and not binding on this court." We disapprove of and expressly repudiate the statements of the Court of Appeals in *Mid-Continent* and *Utica Square* that cumulative trauma injuries are analogous to occupational diseases and that the last exposure doctrine applies in cumulative trauma cases. The Workers' Compensation Court correctly held that the claimant's wage rate was that which was in effect on the date claimant first became aware of his cumulative trauma injury because that was "the time of the injury" under 85 O.S.1991 § 21.

There is nothing in either this Court's opinions or the Oklahoma Statutes to support Rankin's contention that the "time of the injury" in a cumulative trauma case should be other than the date when claimant first becomes aware of an injury. Title 85 O.S. Supp.1994 § 43.A describes "repeated trauma" injuries as injuries separate from the occupational injuries, "asbestosis, silicosis or exposure to nuclear radiation." Further, 85 O.S. Supp. 1994 § 3.10 expressly defines "occupational injury" as a specific type of injury caused by hazards peculiar to the claimant's occupation. We have repeatedly held that occupational disease, and cumulative trauma injuries, raise separate issues. See *Peabody Galion*, and *Parks v. Flint Steel Corporation*, 755 P.2d 680 (Okla.1988), both of which stand for the proposition that the last exposure rule applicable in occupational disease cases, does not apply to cumulative trauma injuries.

The dissenter in *Penny* was correct, we believe, when he said that he did not "believe we can or should extend the legislative act [43 O.S. Supp.1994 § 43.A] changing the limitations period for cumulative trauma injuries ... to also change the date upon which temporary total disability benefits are calculated." The dissent concluded that the majority's holding "constitutes in my opinion, judicial legislation." 909 P.2d at 155.

We held in *Peabody Galion* that "the determinative date in ascertaining a disability—and for establishing the applicable rate of compensation—... in cumulative effect trauma cases ... is the date the manifested condition first becomes known or should be known as job related." 643 P.2d at 316. *Peabody Galion* determines the outcome of this case. No legislation passed since *Peabody Galion* was decided indicates that the legislature disagrees with the *Peabody Galion* rule. The trial court, therefore, properly decided that October 1986, when Rankin first became aware of his condition, was the date to use in setting the amount of Rankin's temporary total disability payments.

CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED; ORDER OF THE WORKERS' COMPENSATION COURT SUSTAINED.

KAUGER, V.C.J., and HODGES, LAVENDER, SIMMS, HARGRAVE and SUMMERS, JJ., concur.

OPALA, J., with whom ALMA WILSON, C.J., joins, dissenting from the court's opinion but concurring in today's disposition.

Today's pronouncement holds that when calculating a worker's 85 O.S.1991 § 21 [1]

---

1. The pertinent terms of 85 O.S.1991 § 21 are: "Except as otherwise provided in this act, the average weekly wages of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation and shall be determined as follows: (2) If the injured employee shall not have worked in such employment during substantially the whole of such year, his *average annu-* *al earning* shall consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or in a similar employment in the same or a neighboring place shall have earned in such employment during the days when so employed." [Emphasis mine.]

wage rate for benefits due for a cumulative-effect accidental injury (caused by repeated micro trauma),[2] the *date of injury always coincides with the time when the claimant first becomes aware* (a) of the manifested harm and (b) of its causal relationship to employment. While I concur insofar as the court holds that (1) Rankin's claim for cumulative-effect accidental injury[3] was timely filed because it was brought within two years of the last harm-causing event and (2) the *Munsingwear, Inc. v. Tullis awareness doctrine*[4] (as refined by *Coy v. Dover Corp./Norris Div.*[5]) was correctly invoked (a) to establish *his date of injury* and (b) to find the applicable wage rate, I *cannot accede to the unqualified breadth* accorded the *Tullis* doctrine by today's pronouncement.

I

## THE ANATOMY OF LITIGATION

Rankin [claimant], an employee of Ford Motor Company, Tulsa glass plant, [Ford or employer] since 1964, filed Form 3[6] to claim compensation for an on-the-job accidental injury caused by cumulative trauma (carpal tunnel syndrome).[7] Claimant alleged *his injury occurred March 1, 1993*—his last day on the job *before undergoing corrective surgery.* Ford was successful in having the trial tribunal apply Rankin's wage rate *of October 1986*[8] in calculating his award.

The trial tribunal (by its January 30, 1995 order) (a) found that Rankin sustained a compensable injury to his hands from repeated micro traumatic episodes on the job and (b) established the wage rate for Rankin's temporary total disability and permanent partial disability by reference to the date *he first became aware of his injury* (October 1986).

Rankin sought corrective relief. After a Court of Appeals' decision for Rankin, Ford sought certiorari, which we granted to review the first-impression issue tendered.

II

## THE 1985 AMENDMENT OF 85 O.S.1981 § 43(A) DID NOT RELEGATE THE *TULLIS* AWARENESS DOCTRINE[9] TO A COMPLETELY INEFFECTIVE STATUS

2. For a discussion of the difference between a cumulative-effect and single-event injury, see *McDonald v. Time–DC, Inc.*, Okl., 773 P.2d 1252, 1254–57 (1989).

3. The court first recognized in 1957 that an "accidental injury" may be effected *progressively over a lengthy period of time* from the cumulative effect of numerous micro traumatic episodes. *See Macklanburg–Duncan Company v. Edwards*, Okl., 311 P.2d 250, 255 (1957).

4. Okl., 557 P.2d 899 (1976). In *Tullis* the court held that a cumulative-effect accidental injury occurs when a worker (a) becomes *aware of* the "ill effect" of repetitive on-the-job trauma and (b) understands the effect to be causally connected with employment. *Id.* at 903. The *Tullis* awareness doctrine was *refined* by *Coy v. Dover Corp./Norris Div.*, Okl., 773 P.2d 745 (1989). There the court superimposed an objective (reasonable man's) standard upon both prongs of the *Tullis* test. *Id.* at 747.

5. *Dover, supra* note 4 at 747.

6. Form 3, the Employee's First Notice of Accidental Injury and Claim for Compensation, serves to initiate the claim process.

7. The time for filing Form 3 is prescribed by 85 O.S.1991 § 43(A). Its pertinent terms provide:

"The right to claim compensation under the Workers' Compensation Act shall be forever barred unless, within two (2) years after the date of accidental injury or death, a claim for compensation is filed with the Workers' Compensation Court. Provided however, a claim may be filed within two (2) years of the last payment of any compensation or remuneration paid in lieu of compensation or medical treatment which was authorized by the employer or the insurance carrier. *Provided further however, with respect to ... injury caused by repeated trauma causally connected with employment, a claim may be filed within two (2) years of the date of last trauma or hazardous exposure....*" [Emphasis mine.]

8. Rankin admitted he had reported to Ford in October 1986 that he had numbness in his hands when using them to perform work at levels above his head. Hrg. Tr.—pg. 10.

9. For a discussion of the *Tullis* awareness doctrine, see *supra* note 4.

Because § 43(A)[10] was amended in 1985, the *Tullis* awareness doctrine (which antedates the amendment's passage, announced as it was in 1976) must be revisited to test its compatibility with the after-enacted legislative change.

## A

### BY THE 1985 AMENDMENT OF § 43(A), CLAIMS FOR ACCIDENTAL INJURY BY A SERIES OF MICRO TRAUMATIC EPISODES ARE BARRED IF NOT BROUGHT WITHIN TWO YEARS OF THE LAST HARM–DEALING ON–THE–JOB EVENT

The post–1985 language of § 43(A), which introduced into the law a concept that partakes of both *limitations* and *repose* notions,[11] bars claims (for compensable cumulative-effect injuries) not brought *within two years of the date the worker was last subjected to harm-dealing forces on the job*. It imposes (1) a *limitation*[12] on repeated-trauma claims[13] as well as (2) a *repose*[14] *vis-a-vis those cumulative trauma injuries that do not culminate in a worker's awareness within two years of the last micro traumatic on-the-job event.*

## B

### THE VARIED IMPACT OF § 43(A)'s 1985 AMENDMENT ON THE TEMPORAL POINT FOR A CUMULATIVE–EFFECT INJURY'S OCCURRENCE

The *date of injury* is critical to establishing the injured worker's wage rate for the compensation award. For cumulative-effect injuries this significant date *usually* coincides with the onset of a functional impairment (or disability) from repeated trauma, which manifest themselves in harm (of which the worker becomes or should become aware).[15] Under the 1985 provisions of § 43(A),[16] as well as before, compensable harm, for which a claim may be brought, occurs when a worker becomes aware (or should be aware) of a manifested injury by cumulative trauma. If the claim be brought by a worker *who remains on the job and continues to experience the same traumatic episodes,* the rate of compensation to be used in calculating the award must be that which applied at the time the repeated harm-dealing events culminated in awareness-inducing pathology. This critical temporal point is to be ascertained by using the *Tullis* awareness test as refined by *Dover*.[17]

Because on-the-job aggravation of an earlier-compensated cumulative-effect injury, which produces increased impairment (or disability), *is treated as another accidental personal injury* within the meaning of the Workers' Compensation Act [85 O.S.1991 §§ 1 et seq.],[18] a worker, who remains in the same employment and continues to be subjected to repeated micro traumatic harm on the job, may bring *successive claims* for increased impairment (or disability) from post-injury aggravation of the earlier-compensated condition. The *date of injury* for each new claim (based on post-injury aggravation) is established by reference to when the worker became aware (or should have

---

10. For the pertinent terms of 85 O.S.1991 § 43(A), see *supra* note 7.

11. For a discussion of the distinction between a statute of limitation and one of repose, see *Smith v. Westinghouse Elec. Corp.*, Okl., 732 P.2d 466, 468 n. 11 (1987).

12. Statutes of limitation serve to place a *limit on the plaintiff's time to bring an action.* After the prescribed time period has lapsed, a statute of limitation *extinguishes the remedy* for the *redress of an accrued cause of action. Westinghouse Elec., supra* note 11 at 468.

13. *See Dover supra,* note 4 at 748.

14. *Repose* serves *to extinguish the right even before a claim may have accrued.* In short, by force of *repose* claims *can be destroyed before they arise. Westinghouse Elec., supra* note 11 at 468.

15. *Tullis, supra* note 4 at 903; *Peabody Galion Corp. v. Workman,* Okl., 643 P.2d 312, 315—316 (1982); *Edwards, supra* note 3 at 255.

16. For the pertinent terms of 85 O.S.1991 § 43(A), see *supra* note 7.

17. For the components of the *Tullis* awareness doctrine, see *supra* note 4.

18. *ITT Continental Baking Co. v. Ware,* Okl., 620 P.2d 1308, 1310 (1980); *Oklahoma City v. Schoonover,* Okl., 535 P.2d 688, 691–92 (1975).

been aware) of the enhanced post-injury pathology and its causal relationship to employment.

The described process for a worker's recovery of benefits due for *post-injury on-the-job aggravation* is to be distinguished from *post-award changes in compensable "conditions"* that give rise to a 85 O.S.1991 § 28 [19] *reopening claim.* The latter process, which takes place—*sans* intervention of new trauma—*from later-occurring changes in pathology,* must be shown (a) to be attributable to *a progression of the earlier compensable injury* and (b) to result in increased impairment (or disability).[20] When a worker's *initial claim* for a repeated-trauma injury is brought *after* he has left employment and is *no longer subjected* to on-the-job harm-dealing forces, the *date of injury* (for calculating the compensation rate that is due) must be the "date of last trauma."[21] In short, *only for workers who may no longer bring additional claims for their accidental post-injury on-the-job aggravation* [and must hence stand confined by law to § 28 reopening relief for additional benefits due upon progressive deterioration of their compensable condition] is the *date of injury* moved forward (by force of the 1985 amendment) to the point in time when the employee *last* experienced a harm-dealing on-the-job event.

### III

### SUMMARY

The 1985 amendment of § 43(A) *moved the limitation's point* of beginning from the earlier temporal marker—the date when compensable harm from repeated trauma culminated in "awareness"—to when the worker was last subjected to a micro traumatic on-the-job event. All claims for a cumulative-effect injury brought two years *after the last harmful event* are barred by the law's re-

pose, whether—before that period's expiration—the injury *did or did not* manifest itself in awareness-inducing impairment (or disability).

Even though the 1985 amendment of § 43(A) *did modify* the *Tullis* awareness test, it *did not totally eliminate* the conceptual underpinnings for an accidental injury by repeated trauma. While the *Tullis* doctrine can no longer trigger the limitation period, it remains viable as an aid in establishing the *date of injury (and hence the wage rate) for those workers who remain subject to continued harm-dealing forces in their work environment. For all other claimants the date of injury is, by force of the 1985 amendment, postponed to the date of their last encounter with harm-dealing on-the-job forces.*

Because I cannot countenance the court's declaration that the *Tullis awareness test must be continued in force* to dictate a worker's compensation rate *for all* repeated-trauma claims, I *recede entirely* from today's pronouncement, acceding *only to the court's disposition.*

**19.** The pertinent terms of 85 O.S.1991 § 28 are: "Upon its own motion or upon the application of any party in interest *on the ground of a change in condition, the Court may at any time review any award, and, on such review, may make an award ending, diminishing or increasing the compensation previously awarded,* subject to the maximum and minimum provided in the Workers' Compensation Act...." [Emphasis added.]

**20.** *Benning v. Pennwell Publishing Co.,* Okl., 885 P.2d 652, 655–56 (1994); *Oklahoma Gas & Electric Co. v. State Industrial Court,* Okl., 366 P.2d 609, 613 (1961).

**21.** *See* the pertinent terms of 85 O.S.1991 § 43(A), *supra* note 7.