1998 OK 78

**SOUTHWEST UNITED INDUSTRIES, and State Insurance Fund, Petitioners,**

v.

**Bill POLSTON and The Workers' Compensation Court, Respondent.**

No. 82471.

Supreme Court of Oklahoma.

July 14, 1998.

Robert Highsaw, Oklahoma City, and Anne Catherine Pittman and John F. Bates, Tulsa, for Petitioner State Insurance Fund.

Michael R. Green, Sites and Green, Tulsa, for Respondent Bill Polston.

Bonita J. Hyatt, Law Office of Earl R. Donaldson, Tulsa, and Aimee Treece, Yukon, for Hartford Insurance Group.

HARGRAVE, Justice.

¶ 1 The claimant, Bill Polston, began working for Southwest United Industries ("employer") in June of 1990. In the following December he began having problems with his hands but did not seek medical attention because he thought that the symptoms were a part of adjusting to the job. The condition worsened to the extent that he sought medical attention in June of 1991. In the following October he was diagnosed as having carpal tunnel syndrome. He declined to undergo recommended surgery because he was "coming up for promotion."

¶ 2 The condition of his hands, arms, and shoulders gradually deteriorated until he filed a claim for compensation on March 3, 1993, and left the company, apparently on March 11, 1993, the date of "last injurious exposure." Hartford Insurance Company provided coverage from 1989 to July 1, 1992, while the State Insurance Fund ("Fund") provided coverage from July 1, 1992. The trial judge found that the claimant had sustained work-related cumulative trauma to his shoulders, arms, and hands, and designated March 11, 1993, as the date of the "last injurious exposure to said trauma." Both Hartford and the Fund were found to be equally liable for the award. The Fund sought review.

¶ 3 The Court of Civil Appeals sustained the award, rejecting the Fund's argument that Hartford alone should pay because its policy was in effect at the time the claimant became aware of his injury. The appellate court also reiterated that apportionment of liability is proper when a cumulative trauma injury occurs during successive employments or during employment with a single employer who has had two successive insurers.

¶ 4 The only issue presented to the Court in the instant matter is whether apportionment of liability is proper when a cumulative trauma injury occurs during employment with a single employer who has had two successive insurers? We answer in the affirmative.

¶ 5 The Fund argues that before liability may be apportioned between two carriers the Workers' Compensation Court must "find two different injuries occurring during the different periods of coverage of the two carriers." This argument lacks merit. Carriers are to be treated in the same manner as employers.[1] Apportionment of liability is clearly appropriate when the evidence establishes cumulative trauma during the period of employment covered by two successive insurers.[2]

¶ 6 The Fund argues that "at least two injuries" are required for apportionment.

---

1. 85 O.S.1991, § 64(B) provides:
   Every such policy shall contain a provision that, as between the employee and the insurance carriers, the notice to or knowledge of the occurrence of the injury on the part of the employer shall be deemed notice or knowledge, as the case may be on the part of the insurance carrier, that jurisdiction of the employer shall, for the purpose incorporated in this title, be jurisdiction of the insurance carrier, and that the insurance carrier shall in all things be bound by and subject to the orders, findings, decisions or awards rendered against the employer for the payment of compensation under the provisions incorporated in this title.

2. In a cumulative trauma case, which of two or more successive employers pays benefits, and how much each pays, are questions of fact for the Workers' Compensation Court. *TRW/Reda*

*Pump v. Brewington*, 1992 OK 31, 829 P.2d 15, 28. There we said:

> "Where the evidence establishes two accidental injuries the question of whether or not disability should be attributed to the first accident or the second is a question of fact and depends on whether the disability sustained was caused by a recurrence of the original injury or by an independent and intervening cause. *Hall v. Howard Johnson of Oklahoma, Inc.*, 297 P.2d 560, 563 (Okla.1956)." As with other factual questions where the proof is conflicting the decision of the lower tribunal will not be disturbed where reasonably supported by competent evidence.

See also, *Parks v. Norman Municipal Hospital*, 1984 OK 53, 684 P.2d 548, 552.

Apportioning liability among two successive carriers for cumulative trauma is in the Fund's view "incomprehensible," and if the Court of Civil Appeals' decision is correct then this Court needs to overrule *Williams v. Lawrence,* 1992 OK 3, 824 P.2d 1134, and *Oklahoma Petroleum Workers' Compensation Association v. Mid–Continent Casualty Co.,* 1994 OK CIV APP 107, 887 P.2d 335. In *Williams,* this Court held that "[a] hearing loss claim caused by repeated small traumatic episodes or occurrences is not divisible in such a manner, but is one single accident." 824 P.2d at 1136. The Fund asserts that *Williams* stands for the proposition that "disability from a cumulative trauma cannot be apportioned." *Williams,* however, dealt with the claimant's awareness of injury for limitations purposes and is distinguishable.

¶ 7 However, the opinion of *Okla. Petroleum Workers' Comp. Assn.,* does conflict with the instant matter. We expressly overrule the opinion in *Okla. Petroleum Workers' Comp. Assn.,* insofar as it is not consistent with our holding in this case. In that case the Court of Civil Appeals plainly disapproved of apportionment of liability between successive insurers for cumulative trauma injury feeling that such trauma should be determined by "the traditional two-prong awareness test." This test is known as the "awareness" doctrine.[3] Under this doctrine the statute of limitation begins to run against the claimant at the time when the claimant becomes aware of an injury. However, cumulative trauma injuries are no longer governed by this doctrine. 85 O.S.Supp.1994 § 43[4] reads in pertinent part:

"A. The right to claim compensation under the Workers' Compensation Act shall be forever barred unless, within two (2) years after the date of accidental injury or death, a claim for compensation is filed with the Workers' Compensation Court. Provided however, a claim may be filed within two (2) years of the last payment of any compensation or remuneration paid in lieu of compensation or medical treatment which was authorized by the employer or the insurance carrier. Provided further however, with respect to disease or injury caused by repeated trauma causally connected with employment, a claim may be filed within two (2) years of the *date of last trauma or hazardous exposure.* * * * " (Emphasis added.)

Repeated trauma, or cumulative trauma accidents are now governed by the date of the last trauma and the awareness test no longer applies.

¶ 8 Apportionment is necessary in instances such as the instant matter where the micro-traumatic exposures were cumulating during two successive insurers. The bilateral carpal tunnel syndrome cumulative trauma, although considered a single injury, is an injury that develops over time. Although claimant first experienced problems with his hands before the State Insurance Fund became the provider in the present matter, claimant's injuries worsened during the time of the Fund's coverage. Competent evidence supports the trial judge's determination that claimant's injury resulted from activities that took place during a period in which both Hartford and the State Insurance Fund provided coverage. The trial judge apportioned 50% to Hartford, 50% to the Fund, then found apportionment between the two providers was appropriate.

¶ 9 The Fund next argues that the finding that any injury occurred in 1993 is simply incorrect because the claimant was examined in October 1991 and had a "history of strenuous and repetitive tasks with his hands" during employment, and because the physician had "diagnosed bilateral carpal tunnel syndrome at that time." This argument, is not persuasive as the evidence established that the cumulative trauma did not stop until March 11, 1993, and because the

---

3. For a complete discussion of the two-pronged awareness test see, *Munsingwear v. Tullis,* 1976 OK 187, 557 P.2d 899, 903. This doctrine was abrogated by an amendment to 85 O.S. § 43 in 1985.

4. Although § 43 concerns statute of limitation questions, and no limitation questions were brought on appeal, it is necessary to discuss this section as it is the cause of the abrogation of the "Awareness Doctrine" in issues of cumulative trauma.

Fund failed to challenge the degree to which liability was imposed.

¶ 10 It is our belief that it is common for an employee to continue in his or her regular duties long after the employee is first aware of an ill effect causally related to employment. As in the present case, the employee sought out medical care while carrying out his duties, hopefully to continue in gainful employment. At some point, the early manifestations of an ill effect may turn into a disabling condition, and it is only at that time the employee is entitled to compensation for the injury. The Legislature chose not to bar claims by such employees when it amended § 43 to allow them two years after the last trauma to file the claim.

¶ 11 In the present matter Polston began working for the employer in June of 1990. The following December he started having problems with his hands but he took no action as he thought that the symptoms were a part of adjusting to the job. The condition worsened and he sought medical treatment in June of 1991. The following October he was diagnosed as having carpal tunnel syndrome. He declined to undergo recommended surgery at that time. The condition of his hands, arms, and shoulders gradually deteriorated until he left the company, apparently on March 11, 1993, the date of last trauma.

¶ 12 Hartford Insurance Company provided coverage from 1989 to July 1, 1992, while the Fund provided coverage from July 1, 1992. Hence, the Fund was the insurer at the time of Polston's last trauma and is responsible for its share of claimant's award. Apportionment between the insurers was appropriate.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS' OPINION VACATED; ORDER OF THE WORKERS' COMPENSATION COURT SUSTAINED.**

¶ 13 KAUGER, C.J., SUMMERS, V.C.J., and HODGES, LAVENDER, SIMMS, ALMA WILSON and WATT, JJ., concur.

¶ 14 OPALA, J., not participating.

