2005 OK CIV APP 53

**KECO, INC. and Medmarc Insurance Company, Petitioners,**

v.

**Carroll HAYWARD; Villanova Insurance Company; The Oklahoma Property and Casualty Insurance Guaranty Association; and the Workers' Compensation Court, Respondents.**

**No. 100,925.**

Court of Civil Appeals of Oklahoma, Division No. 3.

June 30, 2005.

---

James S. Daniel, Paul A. Scott, Scott, Daniel and Associates, Oklahoma City, OK, for Petitioners.

Rex D. Brooks, Robert P. Powell, Rex D. Brooks & Associates, Oklahoma City, OK, for Respondent Carroll Haywood.

John B. Ballard, II, Ballard & Berkowitz, Oklahoma City, OK, for Respondent The Oklahoma Property and Casualty Insurance Guaranty Association.

Opinion by LARRY JOPLIN, Presiding Judge.

¶ 1 Petitioners Keco, Inc. (Employer) and Medmarc Insurance Company (Medmarc, or collectively, Petitioners) seek review of orders of the trial court holding Medmarc solely responsible for cumulative trauma injuries to the left hand/thumb of Respondent Carroll Hayward (Claimant) and dismissing Respondent Villanova Insurance Company (Villanova), predecessor in interest to the Oklahoma Property and Casualty Insurance Guaranty Association (OPCIGA). In this proceeding, Petitioners assert the trial court erred as a matter of both fact and law in dismissing Villanova and holding Medmarc solely liable for Claimant's injuries under 85 O.S. § 11(B)(5). Having reviewed the record, however, we discern no error of law or fact. Accordingly, the order of the trial court is sustained.

¶ 2 Claimant worked for Employer from August 1971 through August 2002. By joint petition in September 1997, Claimant obtained an award of benefits for an injury to his right hand while working for Employer.

¶ 3 In October 2003, Claimant commenced an action against Employer to recover benefits for a cumulative trauma injury to his left hand. As respondents, Claimant named Employer, Villanova and Medmarc; Villanova (whose liabilities were subsequently assumed by OPCIGA) was Employer's workers' compensation insurer from March 2000 through March 1, 2002, and Medmarc was Employer's insurer from March 1, 2002 to March 1, 2003.

¶ 4 At trial, Claimant asserted that he did not know that the injury to his left hand/thumb was job-related until examined in April 2000, and the report of the examining physician referred to March 13, 2000 as the date of injury. Claimant testified that he was last hazardously exposed to the cumulative-trauma-dealing conditions of his employment with Employer on August 29, 2002 when he resigned. Claimant also testified that he submitted to surgery on his left thumb in July 2003; that he was released from medical treatment of his left thumb in October 2003; and that, due to the injury and treatment of his left thumb, he did not work from August 2002 until January 2004 when he accepted other employment not requiring the painful use of his left thumb.

¶ 5 Claimant admitted that, at the time of the joint petition settlement in September 1997, he was experiencing some left thumb pain. Claimant, at one point, asserted that the 1997 joint petition covered only the injury to his right hand, but later admitted that, on the joint petition record, he acknowledged the award was to cover any injury to either hand.

¶ 6 Claimant offered, and the trial court admitted, medical evidence in support of his claim. Medmarc and OPCIGA offered the records of the joint petition settlement, arguing the 1997 settlement cut off any right to benefits for left hand injury absent proof of a subsequent aggravation of the left hand injury, but that the parties had offered no testimony or evidence of such an aggravation.

¶ 7 Medmarc also offered medical evidence argued to show Claimant's awareness of the injury to his left thumb at the time of settlement in 1997, as to render OPCIGA solely liable for Claimant's benefits which had then accrued during Villanova's period of workers' compensation insurance coverage. Alternatively, Medmarc demanded apportionment of liability between it and OPCIGA, arguing that, because Claimant was aware of his left hand injury prior to enactment of § 11(b)(5) in 2001, his right to benefits then became fixed, and that the law in effect at the time permitted apportionment.

¶ 8 OPCIGA offered medical evidence, and argued the testimony and evidence clearly demonstrated Claimant's last hazardous exposure to the trauma-dealing conditions of the employment for more than one-hundred twenty days during Medmarc's coverage period. So, said OPCIGA, Medmarc was solely responsible for Claimant's benefits under § 11(b)(5).

¶ 9 On consideration of the testimony, evidence and argument, the trial court found: (1) the 1997 Joint Petition adjudicated only the injury to Claimant's right hand, not to his left thumb; (2) "on March 13, 2000, [C]laimant became aware [he] had sustained accidental personal injury as a result of cumulative trauma to the Thumb of the left hand arising out of and in the course of [C]laimant's employment" with Employer; and (3) "Claimant's last injurious exposure to said trauma was on August 29, 2002." On these findings, the trial court concluded:

> THAT ... all liability for the alleged injury herein is found against MEDMARC CASUALTY INSURANCE COMPANY herein pursuant to 85 O.S. [§ ]11(B)(5). Although the legal awareness predated the OCTOBER 23, 2001 change in the statute, the cumulative trauma injury continued beyond that date until the [C]laimant's AUGUST 29, 2002 last date of exposure. His exposure from MARCH 2000 until AUGUST 29, 2002 did not change and the injury continued to occur during this time period.

(Emphasis original.) The trial court consequently ordered Medmarc to pay Claimant accrued benefits for 13 weeks of temporary total disability, 25 weeks of permanent partial disability, as well as "all reasonable and necessary medical expenses incurred by [C]aimant [Claimant] as a result of said injury." By supplemental order, the trial court subsequently held "Villanova Insurance Company/Oklahoma Property & Casualty Insurance Guaranty Fund is not liable/responsible for any benefits herein and is hereby dismissed with prejudice."

¶ 10 Petitioners now seek review in this Court, but raise no challenge to the trial court's adjudication of Claimant's compensable injuries. Consequently, the only question to be resolved concerns who, as between OPCIGA and Medmarc, will bear responsibility for payment of Claimant's benefits.

¶ 11 In three substantive propositions, Petitioners argue that the date of Claimant's "awareness" of the job-related cumulative trauma injury to his left thumb determines the date of injury, and both Claimant's right to benefits and an insurer's obligation to pay are consequently fixed under the law in effect at the time of the injury. *See, e.g., Selfridge v. Multiple Injury Trust Fund,* 2002 OK CIV APP 5, ¶ 4, 42 P.3d 1240, 1241; *Rankin v. Ford Motor Co.,* 1996 OK 94, ¶¶ 9, 10, 12, 925 P.2d 39, 40, 41; *Parks v. Flint Steel,* 1988 OK 64, ¶¶ 12–13, 755 P.2d 680, 683; *Munsingwear v. Tullis,* 1976 OK 187, ¶ 13, 557 P.2d 899, 903. So, say Petitioners, because § 11(B)(5) affects a substantive change in the law governing which of several insurers are obligated to pay benefits, that section cannot be applied retroactively to alter liability for an injury occurring before its effective date. *Sudbury v. Deterding,* 2001 OK 10, ¶ 19, 19 P.3d 856, 860; *Knott v. Halliburton Svcs.,* 1988 OK 29, ¶ 4, 752 P.2d 812, 813–814.

¶ 12 In response, OPCIGA argues that, since the 1985 amendment to 85 O.S. § 43(A), which fixed the date of last hazardous exposure as the operative date for statute of limitations purposes, the date of a claimant's "awareness" of his cumulative-trauma injury is irrelevant.[1]  B.F. Goodrich v. Williams, 1988 OK 62, ¶¶ 6, 7, 755 P.2d 676, 678. So, says OPCIGA, notwithstanding Claimant's "awareness" in 2000, because Claimant was continuously exposed to the same cumulative-trauma-injury dealing hazards of the employment until August 2003, Claimant's "inchoate" claim did not accrue until filed in October 2003, two years after the October 2001 effective date of § 11(B)(5), and that the trial court properly applied that section. Alternatively, it argues, the Legislature's 1985 amendment to § 43, dispensing with the "awareness" doctrine for statute of limitations purposes, is consistent with § 11(B)(5), which imposes liability without regard to "awareness," and the Legislature may properly enact legislation applicable to claims arising before the effective date where the legislative intent is so clearly expressed. See also, Norton v. C.P. Blouin, Inc., 511 A.2d 1056, 1062 (Me.1986).

¶ 13 Prior to enactment of § 11(B)(5), the Court of Civil Appeals recognized that, where a claimant suffered cumulative trauma injuries in successive employments, or while insured by successive insurers, apportionment of liability for the claimant's benefits was proper. See, Ball–Incon Glass v. Adams, 1995 OK CIV APP 16, 894 P.2d 439; Kerr Glass Co. v. Wilson, 1994 OK CIV APP 69, 880 P.2d 414; Lummus Const. v. Vancourt, 1992 OK CIV APP 113, 838 P.2d 43; Pauley v. Lummus Const., 1992 OK CIV APP 96, 836 P.2d 692. However, effective October 23, 2001, the Oklahoma Legislature amended 85 O.S. § 11, and subsection (B)(5) now provides:

Where compensation is payable for an injury resulting from cumulative trauma,

the last employer in whose employment the employee was last injuriously exposed to the trauma during a period of at least ninety (90) days or more, and the insurance carrier, if any, on the risk when the employee was last so exposed under such employer, shall alone be liable therefor, without right to contribution from any prior employer or insurance carrier. . . .

¶ 14 By enactment of § 11(B)(5), "the Legislature intended to make the last exposure doctrine apply to cumulative trauma cases, both for determination of the date of injury and for the determination of the liable employer in cases of multiple employers." Celestica Inc. v. Hines, 2004 OK CIV APP 22, ¶ 9, 86 P.3d 1095, 1098. By force of this section, where a claimant suffers a cumulative trauma injury in the course of his or her employment for a single employer, and is last injuriously exposed to the trauma "during a period of at least ninety (90) days," "then 'the insurance carrier . . . on the risk when the employee was last so exposed . . . shall alone be liable, therefor, without right to contribution from any prior . . . insurance carrier.' " OCT Equipment, Inc. v. Ferrell, 2005 OK CIV APP 36, ¶ 7, 114 P.3d 479, 481, cert. den., 2005 OK 38. Application of § 11(B)(5) is not impermissibly retroactive as to an insurer who assumed the risk after that section's effective date. Celestica Inc., 2004 OK CIV APP 22, ¶ 10, 86 P.3d at 1098.[2]

¶ 15 In the present case, it is undisputed that Claimant suffered a cumulative trauma injury while working for Employer, and, although aware of the injury in March 2000, was last exposed to the cumulative trauma dealing hazards of the employment in August 2002. From and after the effective date of § 11(B)(5), Claimant's "awareness" of his cumulative trauma injury was irrelevant to the determination of the "date of injury," by force of that section, determined solely by

---

1. Except for purposes of determining rate of compensation. See, Rankin, 1996 OK 94, ¶¶ 10, 12, 925 P.2d at 40, 41.

2. " . . . Celestica took over the plant after the effective date of the statute and was charged with notice of the law in effect at that time. Additionally, Celestica has failed to cite any authority to support its argument that the last exposure rule is unconstitutional. Indeed, the last exposure doctrine, in occupational disease cases, has long been upheld. See Parks v. Flint Steel Corp., 1988 OK 64, 755 P.2d 680. . . . Accordingly, we find no support for Celestica's argument that the last exposure rule is unconstitutional."

reference to the date of last exposure. *Celestica Inc.*, 2004 OK CIV APP 22, ¶ 9, 86 P.3d at 1098.

¶ 16 Medmarc assumed the risk on or about March 1, 2002, over a year after the effective date of § 11(B)(5), and was charged with notice of the law then in effect. Section 11(B)(5), at that time, imposed liability solely on "the insurance carrier . . . on the risk when the employee was last so exposed [during a period of at least ninety (90) days or more,] . . . without right to contribution from any prior . . . insurance carrier." Medmarc has suffered no increased obligation to pay greater benefits than when it assumed the risk.

¶ 17 We hold the trial court did not err as matter of fact or law in holding Medmarc solely liable for Claimant's cumulative trauma injury to his left thumb. The order of the trial court is therefore SUSTAINED.

BUETTNER, C.J., concurs; and
HANSEN, J., dissents with separate opinion.

CAROL M. HANSEN, Judge, dissenting.

¶ 1 I must respectfully dissent from that part of the majority's opinion which holds 85 O.S. § 11(B)(5) was correctly applied. In my view, the Workers' Compensation Court incorrectly found § 11(B)(5) applicable. That subsection was not the law at the definitive time here, that is, March 13, 2000, the date on which the Workers' Compensation Court found Claimant first became aware his injuries were employment related.

¶ 2 The majority's rationale for holding § 11(B)(5) applicable, and imposing the sole burden of liability on Medmarc, is that [1] Medmarc was the Employer's insurer during a period of more than ninety days when Claimant was last injuriously exposed, and [2] because cumulative trauma injuries are now governed by the date of the last trauma or hazardous exposure, rather than the "awareness doctrine", citing *Celestica, Inc., v. Hines*, 2004 OK CIV APP 22, 86 P.3d 1095.

¶ 3 In my view, *Hines* is both distinguishable on the facts and based on a faulty premise. As acknowledged by the *Hines* Court, the date of the claimant's awareness there was *after* the effective date of § 11(B)(5). Thus, applying the awareness doctrine would not have changed the outcome under the facts in that case. Secondly, and possibly because of the previous conclusion, the *Hines* Court did not fully examine the impropriety of giving § 11(B)(5) retroactive effect. For the following reasons, I would hold that § 11(B)(5) may not be applied where, as here, the claimant's date of awareness predates the effective date of the statute.

¶ 4 My analysis of this question begins with *Southwest United Industries v. Polston*, 1998 OK 78, 964 P.2d 210. While *Polston*, at 212, does contain the statement that cumulative trauma accidents are "now governed by the date of the last trauma and the awareness test no longer applies", I do not believe, when examined in context, and in conjunction with other Oklahoma Supreme Court opinions, *Polston* would be controlling under facts as presented here.

¶ 5 In *Polston*, which was decided before the effective date of § 11(B)(5), the Workers' Compensation Court apportioned liability between two successive insurers. The only issue presented there was "whether apportionment of liability is proper when a cumulative trauma injury occurs during employment with a single employer who has had two successive insurers." In its consideration of that question, the Supreme Court expressly overruled *Oklahoma Petroleum Workers' Compensation Association v. Mid–Continent Casualty Co.*, 1994 OK CIV APP 107, 887 P.2d 335. In this latter case, the Court of Civil Appeals had held the awareness test should be applied to impose sole liability and apportionment was not proper. It was in overruling *Mid–Continent* that the Supreme Court stated the awareness doctrine no longer applied.

¶ 6 In setting forth its reasoning, the *Polston* Court explained that "[u]nder this [awareness] doctrine the statute of limitation begins to run against the claimant at the time when the claimant becomes aware of an injury." The Court then set out 85 O.S. Supp.1994 § 43, the limitation section of the Workers' Compensation Act, which provides that a cumulative trauma claimant has two years from the date of last trauma or hazardous exposure to file a claim. It was at this point the Court stated cumulative trauma

accidents were governed by the date of the last trauma. The *Polston* case, as here, did involve apportionment of liability, however, it was clearly within the context of discussing the statute of limitations that the Court stated the awareness doctrine no longer applied.

¶ 7 The actual crux of *Polston* is in the Court's statement—"Apportionment is necessary in instances such as the instant matter where the micro-traumatic exposures were cumulating during two successive insurers." As the Supreme Court explained in *CR Industries v. Dorsey*, 1998 OK 111, 970 P.2d 179, the *Polston* holding was "that the last injurious exposure does not in itself decide who is liable in a cumulative trauma case." While I recognize this holding is to some degree now obviated by § 11(B)(5), *Dorsey* made clear that it was the necessity of apportionment, not the imposition of a rule to define the specific date of injury for cumulative trauma injuries, that was the true holding in *Polston*.

¶ 8 Additionally, *Polston* did not overrule, even implicitly, the Supreme Court's holding in *Rankin v. Ford Motor Co.*, 1996 OK 94, 925 P.2d 39,[1] that the "time of the injury" for establishing a claimant's wage rate to calculate compensation benefits is "the date claimant first became aware of his cumulative trauma injury." That date in *Rankin* was October 1986, which was after the effective date of the same amendment to § 43, the statute of limitations, that the *Polston* Court and OPCIGA used in their reasoning. The Court in *Rankin* noted the "last exposure doctrine" was applicable for "statute of limitations purposes", but not for establishing the rate of compensation.

¶ 9 The issue in *Rankin* required defining a specific point in time to establish a legal right, that is, the wage used to calculate compensation. Similarly, in the present case the question is whether the date of Claimant's awareness of his injuries pertains to preclude application of § 11(B)(5). The Workers' Compensation Court here found Claimant's date of awareness to be March 13, 2000. Pursuant to *Rankin*, the Workers' Compensation Court should have also found that date to be the *date of injury*.

¶ 10 The *date of injury* is important here because it is well established in our Workers' Compensation jurisprudence that the law in effect on the date of injury "forms a portion of the contract of employment and determines the substantive rights and obligations of the parties." *Cole v. Silverado Foods, Inc.*, 2003 OK 81, 78 P.3d 542. Section 11(B)(5) was not in effect on March 13, 2000, Claimant's date of injury, and therefore was inapplicable to determine liability.

¶ 11 Further, despite the majority's holding that it may, it is my view § 11(B)(5) may not be applied retroactively in this matter. In the absence of express provision giving a statute retroactive effect, it will be presumed to operate prospectively only. *In re Bomgardner*, 1985 OK 59, 711 P.2d 92. There is no such expression by the Legislature in § 11(B)(5), and, in fact, I believe it was constitutionally precluded from doing so.

¶ 12 The majority bases its constitutional conclusion on a due process notice examination. The real question is whether retroactive application of § 11(B)(5) passes constitutional muster under the specific mandates of the Oklahoma Constitution. I believe it does not. In *Cole v. Silverado Foods*, 78 P.3d at 548, the Supreme Court stated:

> The terms of Art. 5 § 54, Okl. Const., protect from legislative extinguishment by retroactive enactments "accrued" rights acquired or "proceedings begun" under a repealed or amended statute.

¶ 13 Under the Oklahoma Workers' Compensation Act, a claimant's cause of action for his injuries accrues at the time of his employment-related accident. *Loftis v. Multiple Injury Trust Fund*, 2003 OK CIV APP 30, 67 P.3d 924 (released for publication by order of the Supreme Court). Accrual of an action does not require that suit shall have commenced at the time the statute is amended. *Id.*, at 926. Although under § 43 Claimant had until two years after the date of his last injurious exposure to bring his claim, he had a right to bring an action against Employer on the date he became aware his injuries resulted from his employment. The fact Claimant had the burden to prove compensa-

---

1. The majority, by footnote, notes *Rankin* still dictates date of awareness as the rule for determining rate of compensation, but fails to distinguish it in regards to its conclusion the date of awareness is no longer applicable for other purposes.

bility of his injuries to recover does not change the time of accrual of his right. That accrued right could not be constitutionally extinguished by enactment of § 11(B)(5). *Id.; See also, Rogers v. Multiple Injury Trust Fund,* 2003 OK CIV APP 42, 69 P.3d 284.

¶ 14 I believe the majority incorrectly invokes *Celestica Inc. v. Hines* for the proposition that the date of awareness doctrine had no efficacy in March 2000, Claimant's date of injury for determining which law is effective for his claim. Under the law in effect on that date, Claimant had a claim against Employer which was constitutionally protected from being burdened by the last exposure provision of § 11(B)(5). For the above stated reasons, I would vacate the Workers' Compensation Court order and remand the matter to that Court for apportionment of liability pursuant to *Polston* in accordance with the competent evidence of record.[2]

---

**2.** In an unpublished opinion, # 101,418, another division of the Court of Civil Appeals found the date of awareness in a cumulative trauma case was the injury date for all purposes, except the statute of limitations, in accord with this author's dissent. It also declined to apply § 11B(5) retroactively.