2006 OK 81

CNA INSURANCE COMPANY and The Oklahoma Workers' Compensation Court, Petitioners,

v.

John W. ELLIS, M.D., Physicians Liability Insurance Company, and Vicki H. Adkins, Appellees.

No. 101,418.

Supreme Court of Oklahoma.

Oct. 24, 2006.

Angela Reinstein, Pierce Couch Hendrickson Baysinger & Green, L.L.P., Oklahoma City, Oklahoma, for Petitioners, CNA Insurance Company and John W. Ellis, M.D.

Louis G. Buchanan, Oklahoma City, Oklahoma, for Appellant, Physicians Liability Insurance Company.

WINCHESTER, V.C.J.

¶1 The primary issue presented in this cumulative trauma injury case is whether the enactment of 85 O.S.2001 § 11(B)(5), which effectively prohibits apportionment by imposing sole liability on the covering insurer on the date of last exposure, should be applied retroactively. We hold that in cumulative trauma injury matters, where the date of injury pre-dates the effective date of the statute, October 23, 2001, § 11(B)(5) is inapplicable.

1. Claimant did not appeal the apportionment ruling, leaving this dispute to the insurance carriers. Claimant did initially appeal the rate of her permanent partial disability compensation,

## BACKGROUND

¶2 Claimant, Vicki H. Adkins, began working for Employer, John W. Ellis, M.D., on July 19, 1999. She sustained work-related, cumulative trauma injuries to her hands, arms and shoulders. Claimant filed her Form 3 on February 19, 2002, alleging the date of last exposure to be February 23, 2000 and continuing. The parties agree that Claimant first became aware of her work-related injury in October, 1999, and the trial judge found October 19, 1999, as the date of injury. This date has not been challenged.

¶3 CNA Insurance Company (CNA) provided the insurance coverage from Claimant's first day on the job through December 31, 1999. On January 1, 2000, Employer's carrier switched to Physicians Liability Insurance Company (PLICO), where coverage has remained at all times relevant since. At the time of trial, March 11, 2004, PLICO had provided all the medical treatment and benefits for Claimant's injuries. PLICO successfully added CNA to the case in July, 2002.

¶4 The trial judge received medical expert evidence from Claimant, as well as CNA and PLICO. PLICO's medical expert report opined that Claimant's injuries occurred entirely before January 1, 2000, prior to PLICO's assumption of coverage. CNA's expert attributed half of the injuries to impairment during CNA's coverage and the other half to impairment during PLICO's coverage. Claimant's expert did not opine as to apportionment of liability. After trial, the trial judge apportioned liability as 70% to PLICO and 30% to CNA.

¶5 Both insurers appealed to a three judge panel (Panel) of the Workers' Compensation Court.[1] CNA, urging sole liability rests with PLICO, asserted that the Legislature abolished the apportionment of liability doctrine when it enacted 85 O.S.2001 § 11(B)(5) and replaced it with the last exposure rule. PLICO argued that while the trial judge was correct to apportion liability, the trial judge erred in his apportionment percentages since the competent medical evi-

see Case No. 101,415, but she has since dismissed that case and the trial court's decision with respect thereto remains intact.

dence showed at most a 50/50 split of liability. The Panel reversed the portion of the trial judge's decision apportioning liability and, apparently applying § 11(B)(5), found sole liability rested with PLICO.

¶ 6 PLICO appealed the Panel's ruling. The Court of Civil Appeals (COCA), Division IV, reversed the Panel's decision and remanded with instructions for the trial judge to enter judgment apportioning liability equally between CNA and PLICO. COCA held that § 11(B)(5) should not be applied retroactively and, as such, apportionment of liability in this case is proper. COCA remanded the action because it found the trial judge's apportionment of 70/30 unsupported by any competent medical evidence and, instead, ordered an equal division of liability. Although we agree with the holding of the Court of Civil Appeals, Division IV, we vacate its opinion to reconcile an apparent conflict among divisions of COCA with respect to apportionment of liability and the application of § 11(B)(5).[2]

## I. TITLE 85 O.S.2001 § 11(B)(5) IS NOT TO BE APPLIED RETROACTIVELY.

■ ¶ 7 The legal issue arises from the Legislature's 2001 amendment of Section 11(B)(5) of the Workers' Compensation Act, which reads in pertinent part:

When compensation is payable for an injury resulting from cumulative trauma, the last employer in whose employment the employee was last injuriously exposed to the trauma during a period of at least ninety (90) days or more, and the insurance carrier, if any, on the risk when the employee was last so exposed under such employer, shall alone be liable therefore, without right to contribution from any prior employer or insurance carrier.

Prior to the statute's effective date of October 23, 2001, and on the date of injury in this case, the law allowed apportionment of liability between successive insurers in cumulative trauma cases. *See Parks v. Flint Steel Corp.*, 1988 OK 64, 755 P.2d 680; *Southwest United Industries v. Polston*, 1998 OK 78, 964 P.2d 210; and *CR Industries v. Dorsey*, 1998 OK 111, 970 P.2d 179. After the 2001 amendment, however, the liability of successive insurers for cumulative trauma injuries is expressly governed by the date of last exposure. *See* 85 O.S.2001 § 11(B)(5). Here, Claimant's last exposure occurred after the effective date of Section 11(B)(5) while the date of her first awareness preceded the statute. The dispositive question to be answered is whether § 11(B)(5), which would rest sole liability with PLICO, is applicable to these facts. We hold it is not.

## A. History of Cumulative Trauma Cases

¶ 8 Historically, the date of awareness in cumulative trauma cases has been the determinative date in ascertaining disability. *Peabody Galion Corp. v. Workman*, 1982 OK 42, ¶ 20, 643 P.2d 312, 317. While the last injurious exposure rule applies in occupational disease cases, we have repeatedly distinguished those cases from cumulative trauma cases finding the last exposure rule inapplicable to the latter. *See Peabody Galion, supra; Parks v. Flint Steel Corp.*, 1988 OK 64, 755 P.2d 680. However, in 1985, the Legislature amended the statute of limitations for cumulative trauma injuries, changing the trigger date from the date of awareness to the date of last exposure, just as with occupational disease cases. 85 O.S. § 43(A).[3]

¶ 9 While many argued this amendment signaled the end of the use of the awareness doctrine in all cumulative trauma matters, we disagreed and held that application of the last exposure rule was strictly limited to a determination of the relevant statute of limitations period. *Rankin v. Ford Motor. Co.*,

**2.** The following COCA cases have addressed the application of § 11(B)(5) and will be discussed further herein: *Celestica Inc. v. Hines*, 2004 OK CIV APP 22, 86 P.3d 1095 (Division III); *OCT Equipment, Inc. v. Ferrell*, 2005 OK CIV APP 36, 114 P.3d 479 (Division III); *KECO, Inc. v. Hayward*, 2005 OK CIV APP 53, 123 P.3d 50 (Division III); *Anderson Mechanical, Inc. v. Spiegel*,
2005 OK CIV APP 60, 119 P.3d 1287 (Division III); *Parkhurst v. City of Tulsa*, 2005 OK CIV APP 59, 119 P.3d 1293 (Division I); *Energy Exchanger Co. v. Hill*, 2006 OK CIV APP 56, 135 P.3d 833 (Division I).

**3.** Laws 1985, c. 266, § 4, eff. Nov. 1, 1985.

1996 OK 94, ¶ 8, 925 P.2d 39, 40. The Rankin Court affirmed the *Peabody Galion* rule that the time of injury in cumulative trauma cases is the date claimant first becomes aware of his job-related injury. *Id.* at ¶ 12. The Court further stated that "[n]o legislation passed since *Peabody Galion* was decided indicates that the legislature disagrees with the *Peabody Galion* rule." *Id.*

¶ 10 CNA and COCA, Division III, rely on *Southwest United Industries v. Polston,* 1998 OK 78, ¶ 7, 964 P.2d 210, 212, for the proposition that the awareness doctrine is no longer applicable in any aspect of a cumulative trauma case. Such reliance is misplaced. The only issue presented in *Polston* concerned whether apportionment of liability among successive insurers in a cumulative trauma case was proper. It is true we stated in *Polston* that cumulative trauma injuries are "now governed by the date of the last trauma and the awareness test no longer applies." *Id.* at ¶ 7. However, when taken in context, the Court's recognition of the demise of the awareness test related solely to its relevance to the 1985 amendment to the statute of limitations, 85 O.S. § 43(A). The *Polston* Court went on to hold that "[a]pportionment is necessary in instances such as the instant matter where the micro-traumatic exposures were cumulating during two successive insurers." *Id.* at ¶ 8.

¶ 11 A few months later, in *C.R. Industries v. Dorsey,* 1998 OK 111, ¶ 4, 970 P.2d 179, 180, we again allowed apportionment of liability and reiterated that, based on *Polston,* "the last injurious exposure does not in itself decide who is liable in a cumulative trauma case." We believe Judge Hansen, dissenting in *KECO, Inc. v. Hayward,* 2005 OK CIV APP 53, ¶ 7, 123 P.3d 50, 55, and *Anderson Mechanical, Inc. v. Spiegel,* 2005 OK. CIV APP 60, ¶ 7, 119 P.3d 1287, 1291, both of which are discussed later herein, was correct when she wrote " . . . it was the necessity of apportionment, not the imposition of a rule to define the specific date of injury for cumulative trauma injuries, that was the true holding in *Polston.*" To hold otherwise would render our decision in *Rankin* a nullity.[4]

¶ 12 The date of Claimant's injury is the critical date in determining the applicability of § 11(B)(5) to the instant matter. This is so because, generally, the law in effect at the time of the employee's injury controls. *See* 85 O.S.2001 § 3.6(F)("Benefits for an injury shall be determined by the law in effect at the time of the injury"). Because § 11(B)(5) was not in effect on the date of Claimant's injury, October 19, 1999, we must determine if the Legislature intended it to have retroactive effect.

¶ 13 Statutes are typically not given retroactive effect unless the Legislature has made its intent to do so clear. Any doubts must be resolved against a retroactive effect. *Crawford v. Guardian Life Ins. Co.,* 1997 OK 10, ¶ 8, 954 P.2d 1235, 1238. Here, the Legislature provided no language expressing its intent for § 11(B)(5) to apply retroactively. The absence of such intent is likely because substantive rights of the affected parties would have been violated.

¶ 14 The right to compensation *and the obligation to pay* such benefits becomes vested and fixed by law at the time of the claimant's injury. Such rights cannot be affected by after-enacted legislation. *Knott v. Halliburton Services,* 1988 OK 29, ¶ 4, 752 P.2d 812, 813. The statutes in force on the date of injury form a part of the contract and determine the rights and obligations of the parties. No subsequent amendment can operate retrospectively to affect in any way the substantive rights and obligations which are fixed. *King Mfg. v. Meadows,* 2005 OK 78, ¶ 11, 127 P.3d 584, 589. *See also Sudbury v. Deterding,* 2001 OK 10, 19 P.3d 856 (Retroactive effect not given to an amendment altering the potential liability of a party by substantially increasing the damages available for a wrong).

¶ 15 With the enactment of § 11(B)(5), the last exposure rule governs and the insurer covering the risk on the date of last exposure is solely liable. Apportionment of liability with the previous insurer is now prohibited. However, on the date of injury here, as well as on the date PLICO, as the last insurer,

---

4. It is important to point out that *Polston,* a case decided less than two years after *Rankin,* did not even mention the *Rankin* case, much less overrule it.

assumed the covered risk, § 11(B)(5) was not yet in existence and apportionment of liability was still proper. Because this statute affects the substantive rights of the parties, it cannot be given retroactive effect. Accordingly, we hold that under the facts presented in this case, apportionment of liability among CNA and PLICO was appropriate.

## B. The Validity of COCA Opinions Addressing § 11(B)(5).

¶ 16 Because there are several COCA opinions in conflict with our holding here today, we now address the continued viability of these decisions. COCA's Division III first addressed the applicability of § 11(B)(5) in *Celestica Inc. v. Hines*, 2004 OK CIV APP 22, 86 P.3d 1095. There, Hines worked for Lucent Technologies from 1996 until December 1, 2001, and thereafter, she worked for Celestica until March 14, 2003. The trial court determined Hines sustained cumulative trauma injury to various body parts while working for each employer, and found November 1, 2001 as the date of first awareness. Nevertheless, the trial court applied § 11(B)(5) and found Celestica, as the employer on the date of last exposure, March 14, 2003, solely liable for the injuries to Hines.

¶ 17 Celestica appealed, arguing that § 11(B)(5) should not be applied retroactively. Celestica maintained that the *Rankin* opinion established the date of awareness as the requisite date of injury in cumulative trauma cases and, since Lucent was the employer on this date, it should be the liable employer. COCA rejected this argument and held that "... the Legislature intended to make the last exposure doctrine apply to cumulative trauma cases, both for determination of the date of injury and for the determi-

nation of the liable employer in cases of multiple employers." *Celestica, Inc.*, supra, at ¶ 9. Because Celestica became Hines' employer after the effective date of the statute, COCA reasoned it was on notice of the statute's applicability. *Id.* at ¶ 10. The court also rejected the argument that the award should be apportioned according to the law in effect at the time of the injury, since the date of awareness also occurred *after* the effective date of the statute. *Id.* at ¶ 9.

■ ¶ 18 The *Celestica, Inc.* case is distinguishable from the facts presented in the instant matter where the date of awareness precedes the statute's effective date but the date of last exposure does not. On this basis alone, *Celestica, Inc.* is unpersuasive here. Nevertheless, because the date of awareness *and* date of last exposure apparently both occurred after the enactment of § 11(B)(5), we agree its application in *Celestica, Inc.* seems proper. However, we reject the assertion in *Celestica, Inc.* that since the last employer was already on the risk when § 11(B)(5) was enacted, such employer could properly be charged with notice of that statute. Simply because an employer was on the risk at the time of the enactment of § 11(B)(5) does not in itself require the applicability of that statute. To the contrary, as we have previously held herein, where the date of the injury precedes the enactment of § 11(B)(5), apportionment would still be appropriate and a vested right of the subsequent employer which could not be retroactively divested. While the date of injury in *Celestica, Inc.*, apparently came after the enactment of § 11(B)(5), as discussed above, later COCA opinions applied this faulty premise to their own case-specific facts and, therefore, we expressly repudiate this reasoning.[5]

5. *KECO, Inc. v. Hayward*, 2005 OK CIV APP 53, 123 P.3d 50, was a cumulative trauma injury case involving the liability of successive insurers. The claimant, like the Claimant in this case, became aware of her injuries in March 2000, *prior* to § 11(B)(5), and was last exposed to the cumulative trauma in August 2002, after the effective date of § 11(B)(5). COCA, Division III, applying the reasoning of *Celestica*, found Medmarc, as the insurer on the risk on the date of last exposure, solely liable for the claimant's injuries. *KECO, Inc.* at ¶ 17. Following *Celestica*,

the majority reasoned that, although prior to the enactment of § 11(B)(5) apportionment of liability among successive insurers was proper, because Medmarc assumed the risk of coverage *after* the effective date of this statute, it was charged with notice of the law then in effect. *Id.* at ¶ 14.

Less than two months later, the same COCA, Division III, decided *Anderson Mechanical, Inc. v. Spiegel*, 2005 OK CIV APP 60, 119 P.3d 1287, a case factually similar to *KECO, Inc.* There the COCA continued its reasoning that application of

¶ 19 CNA also cites *Parkhurst v. City of Tulsa*, 2005 OK CIV APP 59, 119 P.3d 1293 in support of its claim that § 11(B)(5) should apply herein. The sole issue in this COCA, Division I opinion was whether "the date of injury for cumulative trauma injuries is based on the date of first awareness or the date of last exposure." *Parkhurst*, at ¶ 1. While not providing any factual details regarding the specific dates of first awareness or last exposure at issue, COCA held that the express language of § 11(B)(5) overruled *Rankin* by applying the last exposure doctrine to all matters in cumulative trauma cases. On its face, we cannot disagree with the opinion in *Parkhurst* because we are unable to surmise whether the date of awareness there occurred prior to the enactment of § 11(B)(5).[6]

¶ 20 Finally, in the most recent COCA opinion to address § 11(B)(5), *Energy Exchanger Co. v. Hill*, 2006 OK CIV APP 56, 135 P.3d 833, COCA, Division I, overruled the trial court's apportionment of liability between successive employers. Although the claimant's date of awareness in that case preceded the enactment of § 11(B)(5), COCA once again followed *Celestica* in ruling that "the terms of § 11(B)(5) are mandatory, and leave no room for apportionment of liability between the previous employer and the last employer." *Energy Exchanger Co.* at ¶ 17. For reasons previously expressed, we reject and overrule *Energy Exchanger Co.*

### C. Determination of Apportionment.

¶ 21 As mentioned previously, the trial court apportioned 70% of the liability to PLICO and 30% of the liability to CNA. No explanation was provided as to how the trial court reached this determination. At trial, PLICO denied any responsibility to Claimant. On appeal, PLICO argues that the only medical evidence addressing apportionment, aside from its own expert report which as-

signed all liability to CNA, is the report of CNA's medical expert apportioning liability 50–50 as to each insurer. Claimant's expert report did not discuss apportionment. PLICO urges that, based on the medical evidence presented by the parties, liability should be shared equally by PLICO and CNA. COCA agreed and remanded the matter with instructions to enter judgment apportioning liability equally between CNA and PLICO. COCA's instruction is vacated. We remand the cause back to the trial court for an on-the-record assessment of apportionment that is based upon competent probative medical evidence as to the degree of impairment caused during each insurer's coverage period. *Hammons v. Oklahoma Fixture Co.*, 2003 OK 7, ¶ 4, 64 P.3d 1108, 1110.

CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS' OPINION VACATED; JUDGMENT OF THE TRIAL COURT AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.

WATT, C.J., LAVENDER, HARGRAVE, OPALA, EDMONDSON, TAYLOR, JJ., concur.

KAUGER, COLBERT, JJ., concur in result.

---

§ 11(B)(5) and the last exposure rule was proper and that it was "not impermissibly retroactive as to an insurer who assumed the risk after that section's effective date." *Anderson Mechanical, Inc., supra*, at ¶ 7, citing *Celestica, supra*, at ¶ 10. For the reasons discussed in repudiating this portion of the *Celestica, Inc.* opinion, we likewise overrule the opinions in *KECO, Inc.* and Anderson Mechanical.

6. Likewise, in *OCT Equipment, Inc. v. Ferrell*, 2005 OK CIV APP 36, 114 P.3d 479, a case interpreting the applicability of § 11(B)(5), we are unable to determine whether the date of first awareness preceded the enactment date of the statute. Accordingly, on its face, we cannot disagree with the ruling in *OCT Equipment, Inc.*